JUAN MANUEL MENDOZA, APPELLANT, *v.*
THE STATE OF NEVADA, RESPONDENT.

No. 43390

March 16, 2006                          130 P.3d 176

*Amesbury & Schutt* and *David C. Amesbury* and *John P. Parris*, Las Vegas, for Appellant.

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, and *James Tufteland*, Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MAUPIN, J.:

In this appeal, we clarify the criteria for dual convictions for kidnapping and robbery when such charges arise from a single course of conduct. We also resolve questions concerning custodial statements to authorities under *Miranda v. Arizona*,[1] where the accused has not explicitly stated the intent to waive the right to counsel, and the discretion of the district court in limiting cross-examination in criminal cases.

We conclude that the district court adequately instructed the jury with regard to kidnapping charges for which appellant Juan Mendoza stood trial. In this, we hold that to sustain convictions for both robbery and kidnapping, whether charged in the first or second degree, arising from the same course of conduct, any

---

[1]384 U.S. 436 (1966).

movement or restraint must substantially increase the risk of danger to the victim over and above that necessarily present in the crime of robbery; or the seizure, restraint, confinement or movement, etc., must substantially exceed that required to commit the robbery. Beyond that, dual culpability may only result if the act of kidnapping stands alone with independent significance from the act of robbery itself.[2] In aid of this holding, we provide a sample instruction governing such charges for future use within the Nevada district court system. We also conclude that no *Miranda* violation occurred during custodial interrogations of Mendoza by the police. Finally, while we conclude that the district court erred in its restriction of Mendoza's cross-examination of one of the State's witnesses, we find that error harmless beyond a reasonable doubt. Accordingly, we affirm the judgment entered below.

## PROCEDURAL HISTORY

The State charged Mendoza with various offenses stemming from robberies committed at the residences of Martha Pedrego and Guillermo Canon: one count of conspiracy to commit burglary; two counts of burglary while in possession of a firearm; five counts of robbery with the use of a deadly weapon; two counts of battery with the use of a deadly weapon resulting in substantial bodily harm; and two counts of first-degree kidnapping with the use of a deadly weapon. At trial, the State introduced Mendoza's confession concerning the two incidents, along with percipient witness testimony. The jury convicted Mendoza on all of the charges in connection with the Pedrego robberies and, as discussed below, all but two of the charges stemming from the Canon robberies.

On appeal, Mendoza challenges his conviction for first-degree kidnapping based upon a claim that the jury instructions describing the elements of robbery and kidnapping arising from the same course of conduct essentially directed verdicts of guilty of kidnapping if the jury believed that he was guilty of robbery. He challenges all of the convictions based upon the district court's rulings

---

[2]As discussed *infra*, this ruling eliminates the distinctions between the rules for dual culpability for first-degree kidnapping and robbery and second-degree kidnapping and robbery. *See Wright v. State*, 94 Nev. 415, 581 P.2d 442 (1978) and *Jefferson v. State*, 95 Nev. 577, 599 P.2d 1043 (1979). Our ruling today also attempts a reconciliation of vagaries that have developed in the rules concerning dual culpability for robberies and incidental kidnappings. In addition to *Wright* and *Jefferson*, see *Garcia v. State*, 121 Nev. 327, 335-36, 113 P.3d 836, 842 (2005); *Hutchins v. State*, 110 Nev. 103, 867 P.2d 1136 (1994); and *Clem v. State*, 104 Nev. 351, 760 P.2d 103 (1988), *overruled in part by Zgombic v. State*, 106 Nev. 571, 798 P.2d 548 (1990).

admitting his confessions to police and restricting his cross-examination of the police officer who took the confessions.

The kidnapping allegations in this case arose from the alleged robberies at the Canon residence. Also, the admissibility of the confession does not bear on the facts of either incident. Thus, in the discussion that follows, we will recount only the facts pertinent to the Canon charges, the facts surrounding Mendoza's custodial admissions to the police, and the events at trial concerning the district court's restriction of his counsel's cross-examination of the police witness.[3]

## DISCUSSION

### Kidnapping and contemporaneous robberies

Evidence at trial indicated that Mendoza and two cohorts entered Mr. Canon's residence with guns, tied him up, looted the premises and robbed other members of the Canon family. During these robberies, Mr. Avalos, an employee of Mr. Canon, arrived at the residence to retrieve his paycheck. The intruders seized Mr. Avalos, took him inside, severely beat him, and took his keys and wallet. The criminal information filed in the district court included individual charges of robbery with the use of a deadly weapon of Mr. Canon and Mr. Avalos, and individual charges of first-degree kidnapping with the use of a deadly weapon in connection with those robberies. Ultimately, the jury convicted Mendoza of robbery as to both Mr. Canon and Mr. Avalos, and convicted Mendoza of kidnapping Mr. Avalos. It acquitted Mendoza on the kidnapping charges concerning Mr. Canon.[4]

The district court gave two kidnapping instructions, instructions 24 and 25. Instruction 24 stated as follows:

> Every person who willfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any person by any means whatsoever with the intent to hold or detain, or who holds or detains, the person: One, for the purpose of committing robbery upon or from the person; or two, for the purpose of killing the person or inflicting substantial bodily harm upon him; is guilty of kidnapping in the first degree.
>
> The law does not require the person being kidnapped to be carried away for any minimal distance.
>
> The term ''inveigle'' means to lead astray by trickery or deceitful persuasion.

---

[3]The district court sentenced Mendoza to a series of consecutive and concurrent sentences ranging from four years minimum to life imprisonment.

[4]The jury also acquitted Mendoza on the charge of battery of Mr. Canon.

Instruction 25 went on to state the criteria for dual convictions for robbery and kidnapping arising from the same course of conduct:

> In order for you to find the defendant guilty of both first degree kidnapping and an associated offense of robbery, you must also find beyond a reasonable doubt either: One, that the movement of the victim was not incidental to the robbery and that the movement of the victim substantially increased the risk of harm to the victim over and above that necessarily present in the robbery; or, two, that the victim was physically restrained and such restraint increased the risk of harm to the victim or had an independent purpose or significance.
>
> "Physically restrained" includes but is not limited to tying, binding, or taping.

In summary, the district court instructed the jury via instruction 24 that it could convict Mendoza of kidnapping if he detained either Guillermo Canon or Jose Avalos "for the purpose of committing robbery." Instruction 25 imposed an asportation or increased risk of harm requirement to maintain concomitant charges of robbery and kidnapping. Mendoza contends that these two instructions, when read together, suggest that a person who commits a robbery will always be guilty of kidnapping. We disagree. Instruction 24 set forth the statutory definition of kidnapping as a "stand-alone" offense.[5] Instruction 25 set forth the parameters under this court's decisions in *Wright v. State*[6] and *Hutchins v. State*[7] for dual convictions for both robbery and first-degree kidnapping arising from a single incident.

In *Wright*, this court reversed kidnapping convictions imposed by the district court in the context of an armed robbery where the victims were moved from one room to another at the crime scene over a short period of time, and then tied up hand and foot with tape. *Wright* embraced the California position taken in *People v. Daniels*.[8] In this, we observed the following:

> If . . . the movement of the victim is incidental to the robbery and does not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself, it would be unreasonable to believe that the legislature intended a double punishment. . . . On the other hand, if the

---

[5]*See* NRS 200.310(1) (defining kidnapping in the first degree under Nevada law).

[6]94 Nev. 415, 581 P.2d 442 (1978).

[7]110 Nev. 103, 867 P.2d 1136 (1994).

[8]459 P.2d 225 (Cal. 1969).

movement of the victim results in increased danger over and above that present in the crime of robbery itself, a kidnap[p]ing charge also may lie.[9]

In reversing the kidnapping convictions, we noted that under the factual scenarios at issue, the movement of the victims during the robbery was "incidental to the robbery and without an increase in danger to them."[10] Interestingly, we did not address whether the physical restraint applied to the victims played a role in the analysis, other than to say that, "[i]n these circumstances, the convictions for kidnap[p]ing must be set aside."[11]

Two subsequent decisions of this court, *Clem v. State*[12] and *Hutchins*,[13] apply the *Wright* doctrine to cases involving physical restraint. Interestingly, *Clem* falsely distinguishes itself from *Wright* on the ground that Clem's victim was physically restrained, and *Hutchins* does not at all refer to *Wright*. More particularly, *Hutchins* states as follows:

> "While the plain language of NRS 200.310(1) does not require asportation, the court has required it when the kidnapping is incidental to another offense, such as robbery, where restraint of the victim is inherent with the primary offense." *However, if the victim is physically restrained, "this, in itself, establishes kidnapping as an additional offense."*[14]

Although *Hutchins* appears to expand the rule in *Wright* to state that physical restraint during the course of a robbery per se proves dual culpability under the Nevada kidnapping and robbery statutes, we went on to further explain that a "kidnapping is not incidental to the underlying offense if 'the restraint increased the risk of harm' or 'had an independent purpose and significance as [being] essential to the accomplishment of' the other offense."[15] Thus,

---

[9]*Wright*, 94 Nev. at 417-18, 581 P.2d at 443-44 (citations omitted).

[10]*Id.* at 418, 581 P.2d at 444.

[11]*Id.*

[12]104 Nev. 351, 760 P.2d 103 (1988), *overruled in part by Zgombic v. State*, 106 Nev. 571, 798 P.2d 548 (1990).

[13]110 Nev. 103, 867 P.2d 1136.

[14]*Id.* at 108, 867 P.2d at 1139-40 (quoting *Clem*, 104 Nev. at 354, 760 P.2d at 105) (emphasis added).

[15]*Id.* at 108, 867 P.2d at 1140 (quoting *Clem*, 104 Nev. at 354, 760 P.2d at 105). This language seems confusing. In paraphrasing *Clem*, we obviously meant to convey that a kidnapping is not incidental to an underlying offense if the restraint increased the risk of harm or had an independent purpose and significance beyond that inherent in the underlying offense. The instructions given by the district court in this instance recognize this notion.

under *Hutchins*, it remains unclear as to whether restraint must substantially increase the risk of harm to the victim over and above that necessarily present in the crime of robbery to justify dual culpability.

Reading *Wright* and *Hutchins* together, an issue of semantics arises over the use of the term "incidental." *Wright* seems to indicate that incidental action in aid of a robbery only implicates the kidnapping statute when the action increases the risk of harm to the victim. *Hutchins* seems to indicate that physical restraint is never merely incidental to the underlying charge.

More recently, in *Garcia v. State*,[16] a panel of this court attempted a retreat from *Hutchins* and return to the test in *Wright*. However, in attempting to paraphrase *Wright*, the decision embraced the test for dual culpability for second-degree kidnapping and robbery adopted in *Jefferson v. State*, to wit: that, "where a person has been charged with second degree kidnap[p]ing and a separate, associated crime, the charge of second degree kidnap[p]ing will lie only where the movement of the victim is over and above that required to complete the associated crime charged."[17] In *Jefferson*, we noted that the test for dual culpability for second-degree kidnapping and robbery differed from the test for dual culpability for first-degree kidnapping and robbery under *Wright*.[18] In short, the *Wright* test focuses upon increased danger while the *Jefferson* test focuses upon unnecessary movement or personal seizure. We conclude that the distinctions between these tests are only semantical. Both involve legitimate considerations in determinations of dual criminality under Nevada's kidnapping statutes.

We now clarify that movement or restraint incidental to an underlying offense where restraint or movement is inherent, as a general matter, will not expose the defendant to dual criminal liability under either the first- or second-degree kidnapping statutes. However, where the movement or restraint serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense, *i.e.*, robbery, extortion, battery resulting in substantial bodily harm or sexual assault, or where the seizure, restraint or movement of the victim substantially exceeds that required to complete the associated crime charged, dual convictions under the kidnapping and robbery statutes are

---

[16]121 Nev. 327, 336, 113 P.3d 836, 842 (2005).

[17]95 Nev. 577, 579-80, 599 P.2d 1043, 1044 (1979).

[18]First-degree kidnapping involves seizure, etc., for the purpose of committing enumerated associated crimes such as robbery, sexual assault, extortion, and battery to inflict substantial bodily harm or murder. *See* NRS 200.310(1). Second-degree kidnapping involves unlawful seizure of a person. *See* NRS 200.310(2).

proper.[19] Also, per *Hutchins*, dual culpability is permitted where the movement, seizure or restraint stands alone with independent significance from the underlying charge.

The evidence against Mendoza justified the district court's instructions on both of the alleged kidnapping offenses. Interestingly, the jury acquitted Mendoza of kidnapping Canon, the case in which physical restraint was clearly shown. As to the kidnapping conviction involving the seizure and restraint of Jose Avalos in Canon's residence, the seizure and restraint resulted in increased danger and injury to Avalos, thus falling within the purview of instruction 25. In short, Avalos was seized, physically restrained, assaulted and then robbed.[20]

To conclude, we hold that to sustain convictions for both robbery and kidnapping arising from the same course of conduct, any movement or restraint must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion. Thus, we retreat somewhat from the statement in *Hutchins* that physical restraint per se satisfies that requirement. For future guidance, we suggest the following instruction be given in these situations:

> In order for you to find the defendant guilty of both first-degree kidnapping (or second-degree kidnapping) and an associated offense of robbery, you must also find beyond a reasonable doubt either:
>
> (1) That any movement of the victim was not incidental to the robbery;
>
> (2) That any incidental movement of the victim substantially increased the risk of harm to the victim over and above that necessarily present in the robbery;

---

[19]This acknowledges that first-degree kidnapping is not committed unless the underlying purpose is robbery, extortion or sexual assault, infliction of substantial bodily harm or murder. We note that the *Wright* test becomes incongruous when the underlying purpose of the seizure or detention is to commit murder. The movement or restraint used will never substantially increase the danger to a murder victim. Accordingly, we conclude that the *Wright* test does not apply when the underlying associated offense is murder.

[20]We reject Mendoza's assignment of error based upon his proffered instructions. One of his proposed instructions was covered by those given by the court, and the other did not embody a correct statement of Nevada law. *See Carter v. State*, 121 Nev. 759, 121 P.3d 592 (2005).

(3) That any incidental movement of the victim substantially exceeded that required to complete the robbery;

(4) That the victim was physically restrained and such restraint substantially increased the risk of harm to the victim; or

(5) The movement or restraint had an independent purpose or significance.

"Physically restrained" includes but is not limited to tying, binding, or taping.

We note finally that instructions 24 and 25 given below comport with our retreat from *Hutchins* and, thus, substantially provided proper guidance to the jury on these issues.

### Miranda

Mendoza next contends that the district court committed reversible error under *Miranda v. Arizona*,[21] when it denied his motion to exclude incriminating statements to police. Mendoza argues that he did not voluntarily or knowingly waive his *Miranda* rights because he did not orally relinquish them or sign a written waiver. The inquiry as to whether a waiver is knowing and intelligent is a question of fact, which is reviewed for clear error.[22] However, the question of whether a waiver is voluntary is a mixed question of fact and law that is properly reviewed de novo.[23]

A valid waiver of rights under *Miranda* must be voluntary, knowing, and intelligent.[24] "A waiver is voluntary if, under the totality of the circumstances, the confession was the product of a free and deliberate choice rather than coercion or improper inducement."[25] A written or oral statement of waiver of the right to remain silent is not invariably necessary.[26] Rather, a waiver may be inferred from the actions and words of the person interrogated.[27] A detective read Mendoza his rights in Spanish, and Mendoza never expressed difficulty understanding the nature of his rights or the

---

[21]384 U.S. 436 (1966).

[22]*See Floyd v. State*, 118 Nev. 156, 171-72, 42 P.3d 249, 260 (2002).

[23]*See Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005).

[24]*See Miranda*, 384 U.S. at 444; *see also Floyd*, 118 Nev. at 171, 42 P.3d at 259-60.

[25]*U.S. v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998) (citing *United States v. Pinion*, 800 F.2d 976, 980 (9th Cir. 1986)).

[26]*See North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

[27]*Id.*

content of the subsequent questioning. Further, Mendoza never expressed a desire not to speak. A review of the totality of the circumstances reveals that Mendoza voluntarily, knowingly, and intelligently waived his *Miranda* rights.[28]

*Cross-examination*

Mendoza argues that the district court committed reversible error and violated his constitutional right to confront witnesses when the court limited his cross-examination of Detective Tirso Dominguez, the officer who took Mendoza's confession. At trial, the district court permitted the defense counsel to expose the termination of the detective but prohibited counsel from exposing the fact that the officer was fired for dishonesty. Determinations of whether a limitation on cross-examination infringes upon the constitutional right of confrontation are reviewed de novo.[29] We conclude that the district court committed error in its limitation of Mendoza's cross-examination. However, given the State's unassailable evidence that Mendoza was involved in the two robberies, this error was harmless beyond a reasonable doubt.[30]

## CONCLUSION

We conclude that the district court's instruction concerning dual culpability for kidnapping and robbery adequately stated the applicable law. In this, we have clarified the rules surrounding such criminal liability. Having rejected Mendoza's other assignments of error, we hereby affirm the judgment of the district court.

ROSE, C. J., BECKER, GIBBONS, DOUGLAS, HARDESTY and PARRAGUIRRE, JJ., concur.

---

[28]Given the wealth of evidence pointing to Mendoza's guilt, even if a *Miranda* violation occurred, any error in admitting Mendoza's un-Mirandized statement is harmless beyond a reasonable doubt. *See Arizona v. Fulminante*, 499 U.S. 279, 295-96 (1991).

[29]*See U.S. v. Sarracino*, 340 F.3d 1148, 1167 (10th Cir. 2003).

[30]*Id.* at 1167-68.