# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT WILLIAM DOWNS, II,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 69378

FILED

JUN 2 8 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree kidnapping and three counts of abuse, neglect, and/or endangerment of a child resulting in substantial bodily and/or mental harm. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

In 2013, a Reno police detective and a social worker were sent to investigate appellant Robert Downs for reports of child abuse of his girlfriend's seven-year-old son. The child was observed to have bloody red eyes and bruises all over his body. Thereafter, Downs was arrested and charged with one count of kidnapping in the first degree (NRS 200.310(1)), and 3 counts of child abuse (NRS 200.508).

A jury convicted Downs on all 4 counts, and Downs now appeals, arguing that (1) the district court erred by not providing a *Mendoza* instruction, (2) there is insufficient evidence to support his first-degree kidnapping conviction, (3) the district court erred by allowing a social worker to provide an expert medical opinion, (4) the district court erred by not requiring the State to prove "substantial" mental harm under NRS 200.508(1), (5) the district court erred by allowing a detective to

SUPREME COURT
OF
NEVADA

(O) 1947A

17-21549

provide expert medical opinion regarding the child's injuries, and (6) the cumulative effect of the alleged errors warrant reversal.[1]

We hold that the district court's jury instruction regarding Downs' child abuse charges was erroneous because it omitted the modifier "substantial" from the term "mental harm." In addition, the district court erred in permitting a detective to provide expert medical opinion regarding the child's injuries. However, Downs has failed to demonstrate any prejudice resulted from these errors. Therefore, we affirm the judgment of the conviction.

*The district court was not required to provide a Mendoza instruction*

Downs argues that the district court erred by not sua sponte instructing the jury, in accordance with *Mendoza v. State*, 122 Nev. 267, 130 P.3d 176 (2006), that to convict him of both kidnapping and child abuse the prosecution had to show that the movement of the child required for the kidnapping charge was not incidental to the child abuse charges. We disagree.

Downs did not request a *Mendoza* instruction below; thus, we review the district court's decision for plain error. *Flanagan v. State*, 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996) ("Failure to object or to request an instruction precludes appellate review, unless the error is patently prejudicial and requires the court to act sua sponte to protect a defendant's right to a fair trial."); *see also Tavares v. State*, 117 Nev. 725, 729, 30 P.3d 1128, 1131 (2001) (providing that this court may "address an error if it was plain and affected the defendant's substantial rights").

---

[1]The parties are familiar with the facts of this case, and we do not recount them further except as is necessary for our disposition.

Moreover, "[t]o amount to plain error, the error must be so unmistakable that it is apparent from a casual inspection of the record." *Martinorellan v. State*, 131 Nev., Adv. Op. 6, 343 P.3d 590, 593 (2015) (internal quotation marks omitted).

In *Mendoza*, this court held that

> to sustain convictions for both robbery and kidnapping arising from the same course of conduct, any movement or restraint must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion.

122 Nev. at 275, 130 P.3d at 181. The *Mendoza* court also provided a suggested jury instruction for situations wherein kidnapping is charged with an associated offense. *Id.* at 275-76, 130 P.3d at 181.

Therefore, whether a *Mendoza* instruction was necessary depends upon whether the movement or restraint involved in the kidnapping charge was incidental to the child abuse charge. Here, Downs bound the child's hands and feet together and gagged the child; these acts constitute the restraint involved in the kidnapping charge. The jury was instructed that a person commits first-degree kidnapping if he "willfully and unlawfully seizes, confines, conceals, kidnaps and/or carries away . . . [a] person, by any means whatsoever with the intent to hold or detain . . . that person for the purpose of inflicting substantial bodily harm . . . or . . . perpetrate upon the person of the minor . . . any unlawful act." We conclude that Downs' restraint of the child was not incidental to the act of child abuse because it increased the risk of danger to the child beyond that necessary to effectuate the child abuse, which involved

holding the child's head underwater in the bathtub in an attempt to drown the child. *Id.* at 275, 130 P.3d at 181. Accordingly, we conclude that any alleged error here is not unmistakable upon a casual review of the record, and thus, the district court did not commit any plain error.[2]

*There is sufficient evidence to support Downs' first-degree kidnapping conviction*

Downs argues that there is insufficient evidence to sustain his first-degree kidnapping conviction under the *Mendoza* factors because his movement or restraint of the child was incidental to his child abuse conviction. Having previously concluded that Downs' movement and restraint of the child was not incidental to the act of child abuse, we further conclude that there is sufficient evidence to support Downs' first-degree kidnapping conviction.

"[T]he test for sufficiency upon appellate review is not whether this court is convinced of the defendant's guilt beyond a reasonable doubt, but whether the jury, acting reasonably, could be convinced to that certitude by evidence it had a right to accept." *Edwards v. State*, 90 Nev. 255, 258-59, 524 P.2d 328, 331 (1974). Therefore, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Milton v. State*, 111

---

[2]Downs also argues that the district court erred in failing to give a *Mendoza* instruction because a letter from a juror sent approximately six weeks after the jury verdict indicates that the juror would have acquitted him had the instruction been given. We decline to address this argument because Downs has failed to demonstrate that a *Mendoza* instruction was plainly required.

Nev. 1487, 1491, 908 P.2d 684, 686-87 (1995) (internal quotation marks omitted).

NRS 200.310(1) makes it a crime to "kidnap[ ] or carr[y] away a person by any means whatsoever . . . for the purpose of . . . inflicting substantial bodily harm upon the person . . . or perpetrate upon the person of the minor any unlawful act." Here, the testimony at trial showed that Downs would tie the child's hands and feet together in the living room, carry him to the bathroom, and put him in the bathtub with cold water. Downs would then hold his head down in the water while he was tied up. Based on this evidence, we conclude a rational trier of fact could have found the essential elements of Downs' first degree kidnapping conviction beyond a reasonable doubt. Thus, we conclude there is sufficient evidence to support Downs' first-degree kidnapping conviction.

*The district court did not err in allowing a licensed marriage and family counselor to diagnose the child with PTSD and RAD*

Downs argues that the district court erred in permitting Andrew Bowser to testify that the child had post-traumatic stress disorder (PTSD) and reactive attachment disorder (RAD) because Bowser is a social worker and is not competent to diagnose such disorders. Because Downs failed to object below, we review for plain error. *Flanagan*, 112 Nev. at 1423, 930 P.2d at 700.

Bowser is licensed as a "[m]arriage and family therapist." *See* NRS 641A.060; NRS 641A.235. Moreover, NRS 641A.080(1) defines, in relevant part, the practice of marriage and family therapy to include "the diagnosis and treatment of mental and emotional disorders." However, Downs argues that even if Bowser is a marriage and family therapist, he is still not competent to diagnose the child with PTSD and RAD under NRS 641A.080(2), which provides that the practice of marriage

and family therapy precludes "[t]he diagnosis or treatment of a *psychotic* disorder." (Emphasis added.) Nonetheless, Downs fails to cogently argue that either PTSD or RAD constitutes a psychotic disorder. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). As such, we conclude that Downs has failed to demonstrate that the district court committed plain error in allowing Bowser to testify regarding his diagnoses.

*The district court's erroneous jury instruction pursuant to NRS 200.508(1) did not prejudice Downs*

Downs argues that the district court erred by allowing his child abuse convictions to stand despite an erroneous jury instruction. Because Downs did not object to the jury instruction below, we review for plain error. *Flanagan*, 112 Nev. at 1423, 930 P.2d at 700.

The State charged Downs with three counts of child abuse under NRS 200.508. NRS 200.508(1) criminalizes willfully causing or permitting a child to "suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect." Moreover, under NRS 200.508(1)(a)(2), "[i]f *substantial bodily or mental harm* results to the child," the perpetrator "is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 20 years." (Emphasis added.) Jury Instruction No. 24 stated that one of the elements of child abuse is that Downs "did cause the child to suffer mental harm and/or substantial bodily harm."

We conclude that NRS 200.508(1)(a) is clear on its face that the modifier, "substantial," applies to both bodily and mental harm, and thus, Jury Instruction No. 24 incorrectly omitted the modifier from mental harm. *See State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011) ("[W]hen a statute is clear on its face, a court can not go beyond the statute in determining legislative intent." (internal quotation marks omitted)).

Nonetheless, we conclude that the erroneous jury instruction did not result in prejudice to Downs. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (providing that a prejudicial error "must have affected the outcome of the district court proceedings"). Although Jury Instruction No. 24 did not use "substantial" to modify "mental harm" when it listed the requisite elements of Downs' child abuse conviction, it correctly defines the term "substantial mental harm" in a separate section as "an injury to the intellectual or psychological capacity or the emotional condition of a child as evidenced by an observable and substantial impairment of the ability of the child to function within his or her normal range of performance or behavior." *See* NRS 200.508(4)(e).

Moreover, the State's indictment relied on *either* substantial bodily harm *or* substantial mental harm, and we conclude there is sufficient evidence to show that Downs inflicted substantial bodily harm to the child under all three counts of child abuse. NRS 0.060 (defining "substantial bodily harm" as "[b]odily injury which creates a substantial risk of death or . . . [p]rolonged physical pain.").

Downs was charged with the following acts of child abuse: (1) tying the child's hands and feet together, gagging him, and submerging him in water; (2) choking the child to the point of losing consciousness;

and (3) repeatedly punching the child throughout his body. In regard to the first two counts of child abuse, Dr. Catherine Wagoner testified that the child's eyes suffered from subconjunctival hemorrhages, which could have been caused by "asphyxiation or strangulation," and that losing consciousness from strangulation or almost drowning can create a substantial risk of death. Under the third count of child abuse, the child suffered bruises to his head, face, back, thighs, legs, and feet. The child told Dr. Wagoner that his back would hurt when he got "spanked." Dr. Wagoner testified that the extent of his injuries likely could have produced "prolonged physical pain." *See Collins v. State*, 125 Nev. 60, 64, 203 P.3d 90, 92-93 (2009) ("[T]he phrase 'prolonged physical pain' must necessarily encompass some physical suffering or injury that lasts longer than the pain *immediately* resulting from the wrongful act." (emphasis added)). As such, we conclude that the erroneous jury instruction did not prejudice Downs.

*Detective Doser's testimony did not prejudice Downs*

Downs argues that the district court erred in allowing Detective Zachary Doser to testify that the child lost his vision because of pressure put on his carotid arteries, and the hemorrhaging in the child's eyes was caused by a lack of oxygen from attempted drowning.[3] Because Downs failed to object below, we review for plain error. *Flanagan*, 112 Nev. at 1423, 930 P.2d at 700.

---

[3]We have considered Downs' other assignments of error regarding Doser's testimony and conclude they are without merit; thus, we do not discuss them in this order.

We conclude that Doser improperly provided an expert medical opinion regarding the effects of strangulation and drowning. "When . . . the cause of injuries is not immediately apparent, the opinion as to the cause should be given by one qualified as a medical expert, not by a law enforcement officer," despite the officer's "law enforcement experience." *Lord v. State*, 107 Nev. 28, 33, 806 P.2d 548, 551 (1991). Here, the cause of the injuries to the child's eyes and neck were not immediately apparent so as to allow Doser to provide an opinion on the subject.

Regardless, we conclude that any error resulting from Doser's testimony did not prejudice Downs in light of the overwhelming evidence that he strangled and attempted to drown the child. *Id.* at 34, 806 P.2d at 551 (providing that a detective's improper expert medical testimony did not prejudice the appellant in light of "other strong evidence of guilt"). Such evidence includes (1) the child's testimony that Downs would hold his head underwater and choke him against the wall; (2) Dr. Wagoner's testimony that the child's injuries were consistent with the effects of asphyxiation or strangulation; and (3) items recovered from Downs' motel room that corroborates the child's statements of being tied up and gagged before his head was held underwater. Thus, we conclude that Doser's improper medical testimony did not prejudice Downs.

*The district court did not err in allowing the child to testify via Skype*

Downs argues that the district court erred in permitting the child to testify via Skype from England because (1) it failed to show that the child would "suffer serious emotional trauma that would substantially impair [his] ability to communicate with the finder of fact" pursuant to NRS 50.580(1); and (2) his counsel was unable to conduct a meaningful cross-examination in violation of his Sixth Amendment right to confront

the child due to technical issues. Because Downs did not raise any of these arguments below, they are reviewed for plain error.[4] *Flanagan*, 112 Nev. at 1423, 930 P.2d at 700.

First, we conclude the district court did not err in permitting the child to testify via Skype. "Generally, a defendant is entitled to enter into agreements that waive or otherwise affect his or her fundamental rights." *Krauss v. State*, 116 Nev. 307, 310, 998 P.2d 163, 165 (2000). Here, Downs and his counsel, Scott Edwards, both clearly stipulated to the child testifying via Skype. When questioned about the State's motion in limine regarding the testimony of a child by alternative means and whether the district court should conduct a hearing on the matter, Edwards stated, "I think [the State's motion is] well-founded, Your Honor. I don't think we need a hearing." Thus, we conclude that the district court did not commit plain error.

Second, we conclude Downs' argument that Edwards was unable to conduct a meaningful cross-examination of the child due to technical issues is without merit. During the child's direct-examination,

---

[4]Downs also argues that (1) the State never qualified the child as understanding the consequences of lying; and (2) the district court failed to identify persons permitted to be with the child during his testimony under NRS 50.600(2)(b) and the child testified in the presence of his father and stepmom. In regard to the first argument, Downs cites to no authority for the proposition that a child witness must be asked any questions regarding the consequences of lying. Thus, we decline to address that argument. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). As to the second argument, we conclude a casual inspection of the record does not clearly indicate that the child's dad and stepmom were in his presence during his testimony, and thus, we reject this argument. *Martinorellan v. State*, 131 Nev., Adv. Op. 6, 343 P.3d 590, 593 (2015).

there were four particular instances where the child stated that the prosecutor "froze," which indicated that the connection was buffering. However, in every instance, the prosecutor repeated the question and ensured that the child understood them. During the child's cross-examination, there was only one instance where the Skype connection was lost for "a second or two."

However, Downs argues that Edwards was forced to "cut his cross-examination short when [the child] could not hear him." The relevant part of the trial transcript is as follows:

> Q     When you talked to Nicole, did she tell you I was going to be talking to you?
>
> A     No.
>
> Q     Did she tell you I would be mean to you?
>
> A     (No audible response.)
>
> Q     Can you hear me [ ]?
>
> Mr. Edwards: That's all, Your Honor.
>
> The Court: Okay. Thank you, Mr. Edwards.

We conclude the transcript does not clearly show that Edwards ended his cross-examination solely due to technical issues, because Edwards could have attempted to repeat his last question. Furthermore, after the State concluded its redirect examination, the district court asked Edwards, "would you like us to attempt to reestablish the connection so you can either ask any additional questions on cross-examination that you did not ask or explore any other issues regarding the testimony of the witness?" Edwards responded, "No, Your Honor." Accordingly, Downs has failed to demonstrate any plain error.

*Cumulative error does not warrant reversal*

Downs argues that the cumulative effects of the alleged trial errors warrant reversal of his convictions. *See Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002) ("The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually."). "When evaluating a claim of cumulative error, we consider the following factors: (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Valdez v. State*, 124 Nev. 1172, 1203, 196 P.3d 465, 481 (2008) (internal quotation marks omitted). We conclude that despite the serious nature of the crimes charged, the State presented compelling evidence of Downs' guilt and the cumulative effect of the two errors—the erroneous jury instruction concerning substantial mental harm and Doser's improper expert medical testimony—did not deprive Downs of his constitutional right to a fair trial. Thus, we conclude that Downs' cumulative error argument is without merit, and we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc: Hon. Elliott A. Sattler, District Judge
Richard F. Cornell
Attorney General/Carson City
Washoe County District Attorney
Washoe District Court Clerk