# IN THE SUPREME COURT OF THE STATE OF NEVADA

SAMUEL EDWARD MEYER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71832

FILED

JUL 2 6 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____S. Young_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of domestic battery by strangulation, battery causing substantial bodily harm, and false imprisonment. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

Appellant Samuel Edward Meyer was arrested for beating and strangling his ex-girlfriend, Patricia Cook, at her home. During the trial, the State called Diana Emerson, a forensic nurse pathologist, to review second-hand documentation of the battery and to testify as an expert witness regarding strangulation, whether there were signs that strangulation had occurred, and the effects of strangulation on human physiology.

On appeal, Meyer argues that the district court erred in qualifying Emerson as an expert witness and in allowing her testimony at trial to exceed the scope of her expertise. Meyer also argues that his false imprisonment conviction is not supported by sufficient evidence because the facts supporting that conviction were incidental to his battery convictions.

SUPREME COURT
OF
NEVADA

(O) 1947A

18-28804

*The district court did not abuse its discretion in admitting Emerson's expert testimony*

Meyer argues that the district court abused its discretion in admitting Emerson as an expert witness because the State failed to establish the NRS 50.275 requirements to qualify expert witnesses. Meyer specifically argues that Emerson's training and experience as a forensic nurse practitioner do not qualify her to diagnose risk of death or substantial bodily harm, which is a necessary element of strangulation. We disagree.

NRS 50.275 governs the admissibility of expert testimony in Nevada, stating that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by special knowledge, skill, experience, training or education may testify to matters within the scope of such knowledge." In *Hallmark v. Eldridge*, we enunciated three requirements a potential expert must satisfy in order to testify pursuant to NRS 50.275: (1) the qualification requirement, (2) the assistance requirement, and (3) the limited scope requirement. 124 Nev. 492, 498, 189 P.3d 646, 650 (2008). The non-exhaustive list of factors used to determine the qualification requirement include: "(1) formal schooling and academic degrees, (2) licensure, (3) employment experience, and (4) practical experience and specialized training." *Id.* at 499, 189 P.3d at 650-51 (footnotes omitted). To meet the assistance requirement, the expert's testimony must be "relevant and the product of reliable methodology." *Id.* at 500, 189 P.3d at 651 (footnotes omitted). The limited scope requirement simply requires that the expert's testimony be limited to matters within the scope of his or her specialized knowledge. *Id.* at 498, 189 P.3d at 650. District court judges have "wide discretion . . . to fulfill their gatekeeping

duties" in determining the admissibility of expert testimony. *Higgs v. State*, 126 Nev. 1, 17, 222 P.3d 648, 658 (2010).

During the *Hallmark* hearing on Meyer's motion in limine, the district court provided a thorough analysis of each of the *Hallmark* factors and explained its decision before qualifying Emerson as an expert witness. As to the qualification requirement, the district court found that Emerson had formal schooling, academic degrees, a current license, and many years of experience as a nurse practitioner. For the assistance requirement, the district court found that Emerson's proposed testimony about whether strangulation resulting in a risk of death or substantial bodily harm occurred was relevant to the issues in the case. The district court also found that Emerson's proposed testimony was a product of reliable methodology because she referenced four separate peer-reviewed treatises in reaching her conclusions. Finally, the district court found that the limited area of Emerson's proposed testimony, as the State articulated in its notice, met the limited scope requirement. We conclude that given the district court's "wide discretion . . . to fulfill [its] gatekeeping duties" in admitting expert testimony, the district court's admission of Emerson's expert testimony was not an abuse of discretion. *Higgs*, 126 Nev. at 17, 222 P.3d at 658.

Meyer also argues that because Emerson testified that the strangulation standards are basically the same in Nevada and California, she revealed a misunderstanding of the important distinctions between the two states' laws concerning battery by strangulation. Meyer argues that under Nevada law, the strangulation must create a risk of death or substantial bodily harm; whereas, in California, the act of strangulation itself is a felony regardless of whether a risk of death or substantial bodily harm actually results. Meyer contends that Emerson's familiarity with the

California standard, combined with her belief that the standard was substantially the same in Nevada, resulted in testimony that exceeded the scope of her expertise.

In California, where Emerson was trained and spent the majority of her career, strangulation "include[s] impeding the normal breathing or circulation of the blood of a person by applying pressure on the throat or neck" with nothing more. Cal. Penal Code § 273.5(d) (West 2014). In Nevada, "'[s]trangulation' means intentionally impeding the normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person *in a manner that creates a risk of death or substantial bodily harm*." NRS 200.481(1)(h) (2013)[1] (emphasis added). Meyer contends that Emerson had a mistaken belief that, like California, Nevada law only requires impediment of a victim's breathing and blood flow irrespective of whether there was an actual risk resulting from it.

We conclude that Emerson's testimony was properly within the scope of her expertise. She gave medical testimony on the effects of different intervals of strangulation on the human body and opined that Cook's injuries were indicative of a significant strangulation injury. Emerson's medical opinion that Cook was exposed to a risk of death or substantial bodily harm is adequately supported by her testimony that 8 seconds of strangulation can cause unconsciousness, 50 seconds can cause irreversible brain damage, and 4 minutes can cause death, combined with her opinion

---

[1]In 2017, the Legislature added a subsection to NRS 200.481 causing the definition of strangulation to move from subsection (1)(h) to subsection (1)(i). 2017 Nev. Stat., ch. 59, § 2, at 228-29. The relevant language of the statute was unchanged.

that Cook was in fact significantly strangled. These statements were within the scope of her expertise. Meyer contends that those figures are meaningless without information on how long Cook was actually strangled. However, Emerson referenced Cook's testimony that she lost consciousness and was unable to control her bowels during the strangulation episode, even though she was unable to describe how long the strangulation lasted. NRS 200.481(1)(h) requires "a risk of death or substantial bodily harm," not that death or substantial bodily harm actually resulted. Thus, Cook's description of the impact of the strangulation supported Emerson's opinion that the strangulation created such a risk.

Meyer's remaining arguments regarding Emerson's testimony are suitable subjects for cross-examination at trial but do not amount to appealable error. For example, Meyer argues that the doctor who treated Cook did not observe significant injuries to her neck, that Emerson never physically examined Cook, and that Emerson never authored or published any of her own research. These are valid concerns that could have been brought at trial to challenge Emerson's credibility as a witness in the eyes of the jury, but do not evidence an abuse of discretion by the district court in qualifying Emerson as an expert. In fact, Meyer's trial counsel did raise each of these arguments in his cross-examination of Emerson. Accordingly, we conclude that the district court did not abuse its discretion in denying Meyer's motion in limine and qualifying Emerson as an expert witness, or in admitting Emerson's testimony at trial as she did not exceed the scope of her expertise.

*Sufficient evidence supports the conviction for false imprisonment*

Meyer argues that his misdemeanor false imprisonment conviction is not supported by sufficient evidence because, under *Wright v. State*, 94 Nev. 415, 581 P.2d 442 (1978), *modified by Mendoza v. State*, 122

SUPREME COURT
OF
NEVADA

(O) 1947A

Nev. 267, 130 P.3d 176 (2006), and *Garcia v. State*, 121 Nev. 327, 113 P.3d 836 (2005), *modified by Mendoza*, 122 Nev. 267, 130 P.3d 176, he cannot be convicted of false imprisonment where the facts relied on by the prosecution for the false imprisonment conviction are the same set of facts relied on for his battery convictions. Relying on *Garcia*, Meyer contends that when a defendant is charged with false imprisonment and a separate associated offense, there must be an additional instruction stating that the false imprisonment requires its own factual basis independent of the associated crime.

The State first argues that the false imprisonment conviction is supported by evidence that is factually distinct from the evidence used to convict Meyer of the two battery counts. The State contends that when Cook attempted to leave her home, Meyer grabbed her by the hair and pulled her back inside, which was a temporally and geographically distinct action from the battery and strangulation that followed. In the State's second argument in response to Meyer's reliance on *Wright* and *Garcia*, it asserts that *Jackson v. State*, 128 Nev. 598, 291 P.3d 1274 (2012), repudiates the analysis of *Wright* and *Garcia* and allows dual culpability where two crimes do not have the same elements.[2]

When analyzing sufficiency of the evidence claims, this court will determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008) (internal quotation marks omitted).

---

[2]The State also invites us to overrule *Wright* and its progeny. We decline to do so.

In *Mendoza*, we clarified that

> where the movement or restraint serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense, *i.e.,* . . . battery resulting in substantial bodily harm . . . , or where the seizure, restraint or movement of the victim substantially exceeds that required to complete the associated crime charged, dual convictions . . . are proper.

122 Nev. at 274-75, 130 P.3d at 180. Here, Cook testified that she attempted to exit her home once she sensed Meyer's anger and impending assault, but Meyer pulled her back inside by her hair, taking her glasses and phone. This occurred before Meyer battered and strangled Cook in a different location of the trailer home. We conclude that "[a] rational trier of fact could have found" that the movement here was excessive enough to warrant dual culpability under *Mendoza*, and there is no need to revisit the *Wright* and *Garcia* line of cases. *Mitchell*, 124 Nev. at 816, 192 P.3d at 727.

Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

cc:  Hon. Elliott A. Sattler, District Judge
Law Office of David R. Houston
Richard F. Cornell
Attorney General/Carson City
Washoe County District Attorney
Washoe District Court Clerk