142 Nev., Advance Opinion 4

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| AJAY AJAY,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 88998<br><br>**FILED**<br><br>JAN 15 2026<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a corrected judgment of conviction, pursuant to a jury verdict, of sexual assault against a child under 14 years and attempted sexual assault against a child under 14 years. Second Judicial District Court, Washoe County; Kathleen A. Sigurdson, Judge.

*Reversed and remanded.*

Karla K. Butko, Ltd., and Karla K. Butko, Verdi,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Amanda Sage, Appellate Deputy District Attorney, Washoe County,
for Respondent.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HERNDON, C.J.:

While appellant Ajay Ajay was being investigated for possible criminal activity, he was brought to the Reno police station for questioning.

During the interview, Detective Carl DeSantis attempted to explain to Ajay the components of his rights to remain silent and to have an attorney present during custodial interrogation. Ajay, a recent immigrant from India, repeatedly expressed confusion during DeSantis's explanation and asked to converse in Hindi. Notwithstanding Ajay's clear confusion, DeSantis attempted to explain each part of the *Miranda* warning until Ajay said he understood, after which DeSantis proceeded with questioning.[1] At the conclusion of the interview, Ajay was arrested.

Before trial, Ajay moved to suppress his statements to law enforcement, arguing, in part, that he had not knowingly and intelligently waived his *Miranda* rights due to his limited English proficiency. The district court denied the motion. On appeal, we focus on Ajay's argument that his *Miranda* waiver was invalid. After reviewing the record, we conclude that Ajay lacked sufficient English proficiency to knowingly and intelligently waive his right to remain silent and to an attorney and that law enforcement had an obligation to provide him with an interpreter before questioning him. We further conclude that the district court erred when it denied Ajay's motion to suppress admitted evidence of the interrogation. Because we find that this error was not harmless beyond a reasonable doubt, we reverse Ajay's judgment of conviction and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Ajay is from a rural part of Haryana, India, and immigrated to the United States in early 2022 when he was 21. He stopped his schooling before completing a high school-level education. Ajay's primary language is

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

Haryanvi, a dialect of Hindi, and he had limited proficiency in English when he was arrested on November 4, 2022.

Ajay was charged with sexual assault against a child under 14 years and attempted sexual assault against a child under 14. These charges arose out of Ajay's alleged conduct with A.P., a 13-year-old boy whom Ajay met while working at a 7-Eleven in Reno and whom he allegedly kissed, undressed, had oral sex with, and attempted to have anal sex with. Several months after this alleged incident, A.P. told his parents that he had a sexual encounter with Ajay, and A.P.'s parents reported Ajay to the Reno Police Department. An investigation was opened, led by Detective Carl DeSantis, shortly after which Ajay was brought into the police station for questioning.

At the police station, DeSantis met Ajay in an interview room. As DeSantis began reading Ajay his *Miranda* rights, Ajay interjected that he was "not good in English—like that." After this comment, DeSantis attempted to explain each part of the *Miranda* warning in more detail, asking repeatedly whether Ajay understood. During each component, Ajay initially indicated that he did not understand, at one point asking to communicate in Hindi. DeSantis used hypotheticals and props in an attempt to convey the dimensions of each right to Ajay. Despite the recurrent indications that Ajay did not understand his rights as read, DeSantis persisted through each component until he received apparent acquiescence from Ajay. After this, DeSantis proceeded with the interrogation, and Ajay eventually confessed. After the interrogation concluded, Ajay was arrested.

While awaiting trial, Ajay moved to suppress his statements to the police, arguing that he was subjected to a custodial interrogation and that he did not knowingly and intelligently waive his *Miranda* rights, given his limited English and lack of experience with the American criminal

justice system. In a pretrial hearing, Ajay testified through an interpreter. The district court denied the motion, finding that Ajay's statements were voluntary and his waiver was valid. In its analysis, the district court noted that DeSantis had spent extra time explaining the *Miranda* warnings, Ajay seemed to affirm that he understood his rights, and Ajay's detailed recall of the conversation while testifying and strategy of denying incriminating details during the interview suggested he understood what was happening.

The case proceeded to a jury trial, with testimony from A.P., DeSantis, and other officers involved in the investigation. Ajay did not testify at trial, although the audio-video recording of the interview was submitted to the jury. The jury returned a guilty verdict on both counts, and Ajay was sentenced to serve an aggregate prison term of 35 years to life. This appeal followed. On appeal, we focus on the denial of Ajay's motion to suppress and Ajay's argument that his *Miranda* waiver was not valid because it was not knowing and intelligent.

## DISCUSSION

Ajay claims that the district court erred by denying his motion to suppress statements made during the custodial interrogation. Ajay contends in significant part that admission of his incriminating statements violated the privilege against self-incrimination guaranteed by the United States and Nevada Constitutions because he did not knowingly and intelligently waive this privilege.[2] Under the self-incrimination clauses of the United States and Nevada Constitutions, statements made by suspects during custodial police interrogations "are inadmissible unless the suspect received a prior *Miranda* warning." *Boehm v. State*, 113 Nev. 910, 912, 944 P.2d 269, 270-71 (1997).

---

[2]U.S. Const. amend. V; Nev. Const. art. 1, § 8(1).

We first note that whether Ajay was in custody during DeSantis's interview is not disputed on appeal. The district court did not address whether Ajay was in custody in its ruling on the motion to suppress. Rather, the court denied the motion after finding that Ajay intelligently and voluntarily waived his *Miranda* rights. Additionally, on appeal, the State has not challenged Ajay's assertion that he was in custody during the interrogation. Therefore, for the purposes of this opinion, we assume that DeSantis's interview of Ajay was a custodial interrogation.

We next turn to whether Ajay knowingly and intelligently waived his privilege against self-incrimination. Whether a defendant knowingly and intelligently waived their *Miranda* rights is a question of fact reviewed for clear error. *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181 (2006). "The State bears the burden of showing by a preponderance of the evidence that the defendant knowingly and intelligently waived his Fifth Amendment rights after receiving *Miranda* warnings." *Harte v. State*, 116 Nev. 1054, 1062, 13 P.3d 420, 426 (2000). The validity of such a waiver is "based on the particular facts and circumstances presented." *Id.*

Where a defendant has limited English proficiency, we consider factors such as the language barrier between the defendant and law enforcement, efforts by law enforcement to explain the defendant's rights, the defendant's background and experience, and the defendant's own indications that they understood their rights and knowingly and intelligently waived them. *See Mendoza*, 122 Nev. at 276-77, 130 P.3d at 182 (inferring a valid waiver from a Spanish-speaking defendant where the rights were explained in Spanish, the defendant indicated he understood, and the defendant did not indicate that he wanted to exercise those rights); *Harte*, 116 Nev. at 1062, 13 P.3d at 426 (considering "the background, experience[,] and conduct of the accused" in determining the validity of a

*Miranda* waiver); *see also Gonzales v. State*, 131 Nev. 481, 492-94, 354 P.3d 654, 661-62 (Ct. App. 2015) (holding that a Tagalog-speaking defendant gave a valid *Miranda* waiver where he had prior interactions with police in the United States and told a detective that he understood everything during the interrogation, despite significant reliance on an interpreter).

The district court found that Ajay waived his rights knowingly and intelligently based on DeSantis's slow and thorough efforts and on what the district court perceived to be Ajay's relative ability to converse with DeSantis during the interview. However, on review of the interview, including the audio-video recording, it is apparent that Ajay's rudimentary English abilities impeded his ability to understand his constitutional rights as read to him by DeSantis.

While DeSantis attempted to Mirandize Ajay, Ajay twice answered that he was not a proficient English speaker and at one point asked for someone who could speak with him in Hindi. Early in the process, DeSantis told Ajay that he had the right to remain silent and the right to an attorney, to which Ajay responded, "I'm not good in English—like that." DeSantis merely said, "okay" and immediately proceeded with the next part of the warning. Later, Ajay once again indicated that he was struggling to understand DeSantis, stating that he wanted "to talk in Hindi" and asking for an interpreter. DeSantis said, "I don't," when asked if the department had an interpreter and again continued Mirandizing Ajay in English. During the pretrial motions hearing, Ajay testified that he had arrived in the United States seven months prior to the interrogation, had not completed a high school education or its equivalent, had no education in American civics, and had no education or formal training in English. Ajay testified that his English was sufficient to operate a cash register at a convenience store.



The language barrier was also apparent as DeSantis repeatedly asked Ajay if he understood specific components of his rights. During the pretrial hearing, DeSantis testified that, when Ajay said he did not understand, DeSantis "would continue to explain it to him until he indicated that he did understand." The transcript and audio-video recording of the interview demonstrate that, when Ajay indicated he did not understand a given component, DeSantis persisted in explaining the component—sometimes using hyperbole or a prop—until Ajay acquiesced, even though Ajay clearly struggled with English.

In a particularly questionable instance during the *Miranda* warnings, DeSantis used a tissue box as a prop to explain the right to an attorney. Prior to this, Ajay indicated that he did not understand what an attorney was or the significance of being unable to afford an attorney. To explain what it means for an indigent defendant to be unable to pay for their own attorney and for the State to provide an attorney for them, DeSantis used a tissue box in the interview room as a prop. DeSantis picked up the box and said, "[s]o if this is an attorney," and attempted to explain what it meant to be able to "afford" an attorney, while referencing the box as an attorney. DeSantis seemed to be attempting to explain to Ajay that he would be given the attorney/tissue box for free if he could not afford to pay for it. After reviewing the interrogation, we are concerned that DeSantis further confused Ajay, as Ajay had already voiced and shown difficulty in understanding words and concepts explained in English. When law enforcement uses such an abstract explanatory tactic, it unreasonably risks confusing an already confused, non-English-speaking defendant as to who, or what, an attorney is.

After considering the entirety of the record on appeal, including the audio-video recording of Ajay's interview, we conclude that the district

(O) 1947A

court erred by finding that Ajay knowingly and intelligently waived his *Miranda* rights. The facts indicate that Ajay required an interpreter. It is incumbent upon law enforcement to recognize when the totality of the information and circumstances available to them indicate that a defendant lacks the English proficiency required to understand their rights as read and/or in writing. In these circumstances, law enforcement must likewise recognize when an interpreter is necessary as opposed to persisting in explanations and hypotheticals that are not going to remedy the defendant's lack of understanding. A district court errs when it admits evidence of a custodial interrogation where, as here, a defendant explicitly and implicitly indicates that they do not understand English well enough to waive their rights, and law enforcement fails to meaningfully address this language barrier.

Finally, we conclude that this error was not harmless beyond a reasonable doubt. *See Carroll v. State*, 132 Nev. 269, 287-88, 371 P.3d 1023, 1035-36 (2016). Ajay's incriminating statements were a significant part of the State's case. While the State presented other evidence of guilt, such as A.P.'s testimony, Ajay's confession was critical to the State's presentation of evidence and its argument. Therefore, we conclude that the district court erred by denying Ajay's motion to suppress and that this error prejudiced Ajay.[3]

## CONCLUSION

The totality of circumstances clearly shows that because of Ajay's limited understanding of the English language and the failure to

---

[3]Ajay raises several other issues on appeal, but because of our disposition on the *Miranda* issue, we need not address them. *See Brass v. State*, 130 Nev. 318, 323 n.2, 325 P.3d 1256, 1258 n.2 (2014).

provide him with an interpreter, Ajay did not knowingly and intelligently waive his right against self-incrimination under the United States and Nevada Constitutions; specifically, Ajay's right to remain silent and right to have an attorney present during police questioning. Thus, the district court erred in denying Ajay's motion to suppress and admitting incriminating statements made by Ajay during his interrogation. The State's reliance on these statements at trial further demonstrates that this error was not harmless beyond a reasonable doubt. Accordingly, we reverse the judgment of conviction and remand the matter for proceedings consistent with this opinion.

_____, C.J.
Herndon

We concur:

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A