OPINION
By the Court,
Hardesty, J.:
In this appeal, we clarify whether dual convictions can be obtained for kidnapping and murder when the convictions arise from a single course of conduct. We conclude that in a kidnapping case arising from a single course of conduct, the seizure, restraint, or movement of a victim may substantially exceed that required to complete the associated crime charged. In such cases, dual convictions for kidnapping and murder arising out of the same course of conduct are proper. Applying that test here, Pascua’s kidnapping conviction must be affirmed. We further conclude that the alleged prosecutorial misconduct does not rise to the requisite level of plain error and that the alleged errors, viewed collectively, do not amount to cumulative error. Thus, we affirm Pascua’s convictions of robbery with the use of a deadly weapon and murder with the use of a deadly weapon.

FACTS

On January 25, 2001, Bridget Pascua, Ralph Crispin, and Kimberly Crawford entered Doyle Upson’s studio apartment intending to rob him of a casino sports book ticket allegedly worth $44,000. Once inside the apartment, Pascua and Upson began arguing in the *1004 kitchen. Crawford then struck Upson’s head with a hammer causing Upson to slump into a nearby chair in the kitchen.
After Pascua made repeated demands for money, Upson handed his wallet over to Crispin. Crawford then struck Upson with the hammer twice more in an effort to locate the sports book ticket as well as to ascertain the combination to Upson’s safe. Upson surrendered the combination to his safe but denied possessing the sports book ticket.
After attempting to inject Upson with valium, Pascua and Crispin dragged Upson from the kitchen to his bed. Crawford struck Upson’s head with the hammer several more times as he lay in his bed. Additionally, Pascua strangled and choked Upson and filled his nostrils and mouth with caulking. After enduring approximately eight hours of torment, Upson died. Pascua was subsequently arrested and charged with one count of first-degree kidnapping with the use of a deadly weapon, one count of robbery with the use of a deadly weapon, and one count of murder with the use of a deadly weapon.
Pursuant to a Faretta hearing, the district court permitted Pascua to represent herself at trial.[1] At the close of the State’s case, Pas-cua moved to dismiss the kidnapping charge arguing that the State had failed to present any evidence demonstrating that Upson’s movement from the kitchen to his bed was more than incidental to the underlying crimes of robbery and murder. The district court eventually denied Pascua’s motion, and the jury found Pascua guilty on all three counts.

DISCUSSION

Dual convictions

The information charged Pascua with first-degree kidnapping with the use of a deadly weapon “for the purpose of robbing and/or killing [Upson].” Citing Wright v. State,[2] Pascua argues that her kidnapping conviction should be reversed because the movement of Upson from the kitchen to his bed was incidental to the crimes of robbery and murder.
This court recently clarified the criteria required to support dual convictions for kidnapping and robbery when those charges arise from a single course of conduct. In Mendoza v. State,[3] we concluded that “movement or restraint incidental to an underlying offense where restraint or movement is inherent, as a general matter, will not expose the defendant to dual criminal liability under either *1005 the first- or second-degree kidnapping statutes.”[4] Yet we qualified that generality by stating that in situations
where the movement or restraint serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense ... or where the seizure, restraint or movement of the victim substantially exceeds that required to complete the associated crime charged, dual convictions under the kidnapping and robbery statutes are proper.[5]
Applying the test set forth in Mendoza, we disagree with Pas-cua’s contention that her convictions for kidnapping and robbery should be reversed. After robbing Upson in his kitchen of his wallet and obtaining the combination to his safe, Pascua and Crispin dragged Upson to his bed where he was subsequently beaten and strangled to death. The movement of Upson from the kitchen to his bed could have been determined by the jury to have had independent significance apart from the underlying robbery.[6] Moreover, as in Mendoza, the jury was adequately instructed on the requirements for a dual conviction of kidnapping and robbery.[7] Thus, we conclude that Pascua’s convictions for kidnapping and robbery were proper.
However, our analysis does not end there because, as noted above, the information charged Pascua with kidnapping with the use of a deadly weapon “for the purpose of robbing and/or killing [Upson].” (Emphasis added.) Therefore, we must determine whether dual convictions for kidnapping and murder, derived from a single course of conduct, can exist.
NRS 200.310(1) defines first-degree kidnapping:
A person who willfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away a person by *1006 any means whatsoever with the intent to hold or detain, or who holds or detains, the person for ransom, or reward, or for the purpose of committing . . . robbery upon or from the person, or for the purpose of killing the person or inflicting substantial bodily harm upon him ... is guilty of kidnapping in the first degree which is a category A felony.
Just as with kidnapping and robbery, we conclude that ‘ ‘where the seizure, restraint or movement of the victim substantially exceeds that required to complete the associated crime charged,” dual convictions under the kidnapping and murder statutes are proper.[8] Although we are cognizant that seizure, restraint, or movement often occurs incidental to the underlying offense of murder, there are certainly situations in which such seizure, movement, or restraint substantially exceeds that required to complete the murder. For example, dual convictions could stand where the object is murder and the victim is kidnapped for that purpose. We can also imagine a scenario in which a person is kidnapped for ransom and is murdered in order to prevent the victim from identifying the kidnapper.
Here, after refusing to divulge information surrounding the sports book ticket, Upson was moved from the kitchen to the bed where he was eventually murdered. The State maintained that the movement of Upson away from a broken window in the kitchen was intended to make his discovery by neighbors less likely. After placing Upson in the bed, the jury heard evidence that he may have been tied down, thus lessening his ability to attempt an escape. Additionally, while in the bed, Pascua climbed on top of Upson, started choking him, and filled his nostrils and mouth with caulking while Crawford continued to strike him with the hammer.
Thus, the movement of Upson could have been found by the jury to have had the independent purpose of torturing Upson into revealing the location of the sports book ticket. It also enhanced Pas-cha’s opportunity to further assault Upson while keeping Upson away from the broken window and unable to move. Hence, the jury could have found that Upson’s movement to the bed substantially exceeded that required to complete the associated crime, since it lessened his chances of being found or being able to escape while providing Pascua with greater opportunity to cause further harm to Upson. Therefore, we affirm Pascua’s dual convictions of kidnapping and murder.

*1007
Prosecutorial misconduct

Pascua argues that the State committed three separate acts of prosecutorial misconduct during trial: (1) intimidating a key witness, (2) referring to Pascua and her witnesses as liars, and (3) making improper remarks during closing arguments. Thus, Pascua argues that a new trial is warranted. However, Pascua, who represented herself at trial, failed to object to any of the alleged instances of misconduct. “Failure to object during trial generally precludes appellate consideration of an issue.”[9] “Despite such failure, this court has the discretion to address an error if it was plain and affected the defendant’s substantial rights.”[10]
First, Pascua argues that the prosecutor intimidated and coerced a key witness, Rashad Harris, not to testify at trial. “Witness intimidation by a prosecutor can warrant a new trial if it results in a denial of the defendant’s right to a fair trial.”[11] Prior to trial, Harris was advised by his counsel to invoke his Fifth Amendment right against self-incrimination. Moreover, Harris testified that the prosecutor did not threaten him in any way. Subsequently, Pascua filed two sealed affidavits with the district court indicating that Harris was told that his plea agreement in a separate case would be revoked if he testified on Pascua’s behalf. The State objected to the admission of the affidavits as inadmissible hearsay evidence. Regardless of the affidavits’ admissibility, we conclude that there was no plain error as Harris was advised by his counsel to assert his right against self-incrimination and testified that the prosecutor never threatened him.
Second, Pascua argues that the prosecutor improperly referred to Pascua and her witnesses as liars. Prosecutors are prohibited from “asking a defendant whether other witnesses have lied or from goading a defendant to accuse other witnesses of lying, except where the defendant during direct examination has directly challenged the truthfulness of those witnesses.”[12] Likewise, a prosecutor “calling a witness a liar is improper and even asserting that [a] defendant is lying is equally impermissible.”[13] Here, the prosecutor asked questions relating to the veracity of the witnesses, as *1008 well as to Pascua’s own veracity, in an attempt to rebut Pascua’s theory of the case. Thus, the questioning was done in an effort to point out inconsistencies between Pascua’s version of what happened and the other witnesses’ versions. A prosecutor is permitted to “demonstrate to a jury through inferences from the record that a defense witness’s testimony is palpably untrue.”[14] Thus, the alleged violations cannot be said to rise to the level of plain error.
Third, Pascua argues that during the State’s closing argument the prosecutor improperly stated that Pascua’s defense was ludicrous and that if any of the jurors aligned themselves with her, she wins. Additionally, the prosecutor rebutted Pascua’s closing argument, in which she insinuated that the State’s case rested on her fingerprints being found on a glass from Upson’s apartment, by stating that “if she’s suggesting that we’re trying to convict her simply because she had her hands on a glass by itself, that’s how absurd she is.” A criminal conviction will not be overturned based on a prosecutor’s comments absent the resulting deprivation of a fair trial.[15] The prosecutor’s comments during closing arguments were rebuttal to Pascua’s closing argument. These comments neither deprived Pas-cua of a fair trial, nor constituted plain error. As such, Pascua’s argument with respect to prosecutorial misconduct is without merit.[16]

CONCLUSION

We conclude that dual convictions for kidnapping and murder, arising out of a single course of conduct, may exist if the seizure, restraint, or movement of the victim substantially exceeds that required to complete the associated crime charged. Because Upson’s kidnapping had independent significance from his murder, and because the kidnapping substantially exceeded the restraint or movement required to complete the associated crime of Upson’s murder, Pascua’s conviction for kidnapping was proper. We further conclude that the allegations of prosecutorial misconduct do not rise to *1009 the level of plain error and, viewed collectively, do not constitute cumulative error. As such, we affirm the judgment of conviction.
Rose, C. J., Becker, Maupin, Gibbons, Douglas and Parraguirre, JJ., concur.

 Faretta v. California, 422 U.S. 806 (1975).

 94 Nev. 415, 581 P.2d 442 (1978).

 122 Nev. 267, 130 P.3d 176 (2006).

 Id. at 274, 130 P.3d at 180.

 Id. at 274-75, 130 P.3d at 180.

 Sheriff v. Medberry, 96 Nev. 202, 204, 606 P.2d 181, 182 (1980) (“[WJhether the movement of the victims was incidental to the associated offense and whether the movement increased the risk of harm to the victims are questions of fact to be determined by the trier of fact in all but the clearest cases.”).

 Jury Instruction No. 15, reads in pertinent part as follows:
It is the fact, not the distance, of forcible movement of the victim that constitutes kidnapping. However, a charge of kidnapping and an associated offense will lie only where movement of the victim is over and above that required to complete the associated crime charged.
*1006 When associated with a charge of robbery, kidnapping does not occur if the movement is incidental to the robbery and does not increase the risk of harm over and above that necessarily present in the commission of such offense.

 Mendoza, 122 Nev. at 274-75, 130 P.3d at 180.

 Gallego v. State, 117 Nev. 348, 365, 23 P.3d 227, 239 (2001).

 Id. (citing NRS 178.602).

 Rippo v. State, 113 Nev. 1239, 1251, 946 P.2d 1017, 1025 (1997).

 Daniel v. State, 119 Nev. 498, 519, 78 P.3d 890, 904 (2003).

 Rowland v. State, 118 Nev. 31, 39, 39 P.3d 114, 119 (2002) (footnote omitted).

 Ross v. State, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990).

 Greene v. State, 113 Nev. 157, 169, 931 P.2d 54, 62 (1997), overruled on separate grounds by Byford v. State, 116 Nev. 215, 994 P.2d 700 (2000).

 We likewise reject Pascua’s argument that her assignments of error, viewed collectively, mandate reversal as cumulative error. A criminal defendant is not entitled to a perfect trial, only a fair trial. Ennis v. State, 91 Nev. 530, 533, 539 P.2d 114, 115 (1975). Because we have concluded that three alleged errors were insignificant or nonexistent, the cumulative effect of those errors cannot be found to have deprived Pascua of a fair trial, especially in consideration of the evidence presented against her. Big Pond v. State, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985).