# IN THE SUPREME COURT OF THE STATE OF NEVADA

CARLTON BURNETT,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 75983

FILED

OCT 01 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

## ORDER OF AFFIRMANCE

Appeal from judgment of conviction of first-degree murder with use of a deadly weapon. Eighth Judicial District Court, Clark County; Tierra Danielle Jones, Judge.

In August 2017, California officers discovered a partially-decomposed body near the California-Nevada border off the Nipton Road exit. The remains were hidden under a bush, with branches and a rock on top. The officers identified the body as Randall Smith. Smith had seven gunshot wounds, but there was little to no blood in the area surrounding the body. Smith was wearing a wristband for the August 26, 2017, Mayweather-McGregor fight in Las Vegas, Nevada. California officers concluded the shooting occurred in Las Vegas and transferred the case to the Las Vegas Metropolitan Police Department (LVMPD).

LVMPD investigators spoke with Smith's ex-girlfriend, who directed them to an address she knew Smith frequented. Investigators discovered several 911 calls reporting shots behind that address during the early hours of August 25, 2017.

Appellant Carlton Burnett lived at the address. Evidence indicated that Smith and Burnett knew each other, and cell phone records show that the two were in contact in the early morning hours of August 25, 2017, before the shooting. After the time of the shooting, Smith's phone did

20-35999

not ping on any cell tower. Burnett's phone, however, proceeded to use cellphone towers travelling from his home in Las Vegas to Nipton Road, using a cell tower at Nipton Road, and then using cell towers back to Las Vegas, ending at a cell tower near his home.

Burnett was arrested and charged by way of information with murder with use of a deadly weapon. A jury trial was set for March 12, 2018. Meanwhile, detectives subpoenaed cell phones records for a number belonging to Rosean Taylor that Burnett had been in contact with while traveling to Nipton Road on August 25. Homicide detectives received those records on February 20, 2018. Those records revealed contact between Burnett and Taylor before and after the murder. They also showed that Taylor left the area near the reported shooting scene in Las Vegas after the 911 calls and went out Nipton Road, where the body was located. Taylor's records also revealed that his cell phone used the Nipton Road cell tower about a week before the shooting and then returned to Las Vegas. Prosecutors received this information on February 28, 2018, and the following day, March 1, moved to amend the information to add aiding and abetting and conspiracy theories of criminal liability.

Burnett opposed the motion, but the district court found that the amended information introduced no new offenses and that Burnett had sufficient time to prepare to defend the additional theories and therefore the amendment did not substantially prejudice Burnett.

Burnett also moved to dismiss for lack of territorial jurisdiction. The district court denied Burnett's motion to dismiss, finding that the evidence presented at the preliminary hearing suggested the murder happened in Las Vegas and that Burnett's evidence was insufficient to show otherwise. At trial, after the close of the State's case, the defense renewed

its motion. The district court found that the State provided sufficient evidence to show the crime occurred in Las Vegas and accordingly denied the motion.

Burnett noticed Michael Cherry as an expert witness "in computer and cell phone forensics," and stated that "[s]hould this witness testify he will testify regarding cell phone network triangulation and location determination, site/tracking data, cell phone spectrum use, management and availability." The notice did not include an expert report. Fifteen days before trial, Burnett filed a supplemental notice of expert witnesses. Therein, Burnett added Manfred Schenk as an expert witness, taking the place of Cherry. Schenk and Cherry work together at the same firm. Schenk's expert witness description stated "Mr. Schenk is an expert in computer and cell phone forensics. Should this witness testify he will testify regarding cell phone network triangulation and location determination, site/tracking data, cell phone spectrum use, management and availability." Burnett produced Schenk's report on March 5, 2018, seven days before trial.

The State moved to strike defense experts or to continue trial because Burnett did not provide the expert witness report within the required 21 days before trial. The district court held a hearing on the matter and found that Burnett did not timely notice Schenk. Then the district court explained to Burnett that he had the option of proceeding to trial without Schenk and Schenk's expert report or continuing the trial to allow the State to retain an expert. Burnett rejected the continuance and reasserted his speedy trial rights.

Burnett informed the court on the fourth day of trial that Cherry was unavailable to testify. The district court modified its original

ruling so that Schenk could testify in Cherry's place, but he could only testify as to the brief statement provided in the timely notice. Further, the district court ruled that Schenk could not testify to his untimely report or any specifics of the case because defense counsel did not properly put the State on notice that Schenk would testify about those areas. The district court specifically barred Schenk from testifying to "SINR," the scientific term for cellular triangulation, although the court allowed Schenk to testify as to cellular triangulation because that evidence was timely noticed.

The jury found Burnett guilty of first-degree murder with use of a deadly weapon. The district court sentenced Burnett to life in prison with the possibility of parole after 20 years, with a consecutive sentence of 48 to 120 months for the use of a deadly weapon.[1]

Burnett appeals from the judgment of conviction, arguing (1) the district court erred when it denied Burnett's motion to dismiss for lack of territorial jurisdiction, (2) the district court improperly allowed the State to amend the information 12 days before trial, (3) the district court erred when it struck and limited Burnett's expert's testimony, (4) the district court erred when it limited Burnett's cross-examination of the State's expert witness, (5) there was insufficient evidence to sustain the first-degree murder conviction, and (6) cumulative error warrants reversal. For the following reasons, we conclude the district court did not err.

*Territorial Jurisdiction*

Burnett argues there was insufficient evidence to establish territorial jurisdiction. NRS 171.020 provides that "Nevada courts obtain territorial jurisdiction whenever (1) a defendant has criminal intent

---

[1]We do not recount the facts except as necessary to our disposition.

(irrespective of where it was formed) and (2) he or she performs any act in [Nevada] in furtherance of that criminal intent." *McNamara v. State*, 132 Nev. 606, 611, 377 P.3d 106, 110 (2016).

Here, 911 calls reported shots fired in Burnett's neighborhood, and cell phone records indicated that Burnett and Smith had been in contact just hours before the reported shooting, near Burnett's home. Thereafter, Burnett's and Taylor's phones pinged from cell towers travelling from Las Vegas to Nipton Road, then back to Las Vegas. The lack of blood or expended casings around Smith's body shows the murder did not occur where the body was found. Smith's wristband for the Mayweather-McGregor fight in Las Vegas on August 26 further suggest he had recently been in Nevada. This evidence suggests the crime occurred in Nevada, and Nevada has jurisdiction.

*Amended Information*

Burnett argues the district court erred by allowing the State to amend the information 12 days before trial, which did not allow enough time for the defense to adequately prepare to meet the theories of liability added to the murder charge.

We will uphold the district court's decision unless it manifestly abuses its discretion. *See State v. Eighth Judicial Dist. Court (Taylor)*, 116 Nev. 374, 379, 997 P.2d 126, 129 (2000). "The State is required to give adequate notice to the accused of the various theories of prosecution." *Id.* at 377, 997 P.2d at 129. A district judge may allow the prosecution to amend the charging document in a criminal case any time before verdict so long as "no additional or different offense is charged and [the] substantial rights of the defendant are not prejudiced." NRS 173.095(1). "Amendment of the information prior to trial is an appropriate method for giving the accused

the notice to which he or she is entitled." *Taylor*, 116 Nev. at 378, 997 P.2d at 129.

Here, the amendment added alternative theories of criminal liability—aiding and abetting and conspiracy liability—rather than a new offense, and therefore did not drastically change the State's theory of the case. *Cf. Taylor*, 116 Nev. at 378, 997 P.2d at 129 (stating "the amendment of the information to set forth theories of aiding and abetting murder and felony murder merely added alternative theories of the mental state required for first-degree murder and did not amount to the charging of additional or different offenses"). The record shows the State gave adequate notice by moving to amend the day after receiving new information supporting the additional theories. The amendment was 12 days before trial, and the district court offered Burnett the remedy of a continuance to mitigate any prejudice. But Burnett refused the continuance and reasserted his speedy trial rights. Under these facts, we conclude the district court did not abuse its discretion and Burnett fails to show prejudice.

*Expert Testimony*

Burnett contests the district court's decision to limit testimony from his cellular phone expert, Schenk, arguing this violated various constitutional rights, including his right to present a defense. Burnett argues the untimely disclosure did not warrant a sanction here, where the State was not prejudiced. He further contends the district court improperly prevented Schenk from testifying to specific details that were in Schenk's written report, specifically Schenk's explanation of "SINR," or cellular triangulation.

We review a district court's decision regarding expert testimony for a clear abuse of discretion. *Mulder v. State*, 116 Nev. 1, 12-13, 992 P.2d 845, 852 (2000); *see also Evans v. State*, 117 Nev. 609, 638, 28 P.3d 498, 518 (2001) (recognizing district courts have "broad discretion" to determine the appropriate remedy), *overruled on other grounds by Lisle v. State*, 131 Nev. 356, 366 n.5, 351 P.3d 725, 732 n.5 (2015). But we review de novo whether an evidentiary ruling violates the defendant's constitutional rights. *See Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009) (addressing the Confrontation Clause).

Expert witnesses must be disclosed at least 21 days before trial with a brief statement of what the expert will testify to, the expert's curriculum vitae, and a copy of any expert reports. NRS 174.234(2). Where a party fails to provide such notice, a district court may grant a continuance, exclude the evidence, or take other action as appropriate under the circumstances. NRS 174.295(2). The district court *must* exclude the testimony if the party acted in bad faith. NRS 174.234(3)(b). Although a defendant has a fundamental right to present a defense, the defendant must comply with the procedural and evidentiary rules to ensure fairness. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). However, the district court should allow an untimely-disclosed witness to testify where doing so protects the defendant's constitutional right to confront his accusers and the evidence "goes to the heart of the case." *Sampson v. State*, 121 Nev. 820, 827, 122 P.3d 1255, 1260 (2005). Ultimately, "[f]airness during trial is not one-sided and applies to both the defendant and the State." *Id.* at 828, 122 P.3d at 1260.

Here, in contravention of NRS 174.234(2), Burnett attempted to replace Cherry with Schenk 15 days before trial and did not provide

Schenk's report to the State until 7 days before trial. The district court barred any reference to a report or records that were not timely disclosed. We are not persuaded this was improper or violated Burnett's constitutional rights. Even though Cherry and Schenk work together, Schenk's report went beyond the general notice describing the extent of Cherry's testimony. In turn, the State needed to obtain an expert to rebut the unnoticed testimony.[2] NRS 174.295(2) allows the court to bar the untimely-noticed report as a sanction.[3] And the district court still permitted Schenk to testify to cellular triangulation so long as he did not specifically reference SINR. Notably, Schenk's testimony contradicted the State's expert testimony on the range of a cell phone tower. Thus, the limitation of Schenk's testimony did not prevent Burnett from presenting a defense here, and was not an abuse of discretion under these facts.

*Cross Examination*

Burnett argues the district court violated his right to confront witnesses by limiting defense counsel's cross-examination of the State's expert witness, Joseph Sierra.[4] We review a trial court's evidentiary rulings

---

[2]Accordingly, the district court did not abuse its discretion by permitting the State time to find a rebuttal expert. *See Leavitt v. Siems*, 130 Nev. 503, 509, 330 P.3d 1, 5 (2014) ("An abuse of discretion occurs when no reasonable judge could reach a similar conclusion under the same circumstances.").

[3]We note the district court was within its discretion when it offered Burnett the remedy of a continuance for the untimely disclosure. *See* NRS 174.295(2) (stating that if a party fails to comply with discovery requirements the court may grant a continuance).

[4] Sierra is T-Mobile's custodian of records and the State noticed him to testify to "cellular phone records, including cell tower locations and the relation between the two of them."

for an abuse of discretion, but review de novo whether a defendant's Confrontation Clause rights were violated. *Farmer v. State*, 133 Nev. 693, 702, 405 P.3d 114, 123 (2017) (citing *Chavez*, 125 Nev. at 339, 213 P.3d at 484 (2009)). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Chavez*, 125 Nev. at 338, 213 P.3d at 483 (quoting *Pantano v. State*, 122 Nev. 782, 790, 138 P.3d 477, 482 (2006)). Thus, the district court may reasonably limit cross-examination where the questions are repetitive or marginally relevant. *Farmer*, 133 Nev. at 702–03, 405 P.3d at 123.

Here, Sierra testified that a cell tower could reach from two and a half to three miles at maximum. On cross-examination, defense counsel inquired where Sierra learned about the two and half to three mile range. Sierra explained that he learned the information from the meetings he attends with T-Mobile's radio frequency engineers. Defense counsel asked Sierra how many people attend the training. The State objected and the district court sustained the State's objection. Then, defense counsel asked Sierra if the specific engineer had ever been to Nevada, the State objected, and defense counsel withdrew the question. These two objections did not prohibit defense counsel from confronting Sierra about the range of cell phone towers and, moreover, the questions were not relevant. *See* NRS 48.015 (relevant evidence is that which tends "to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence"). Therefore, the district court did not improperly limit cross-examination here.

*Sufficient Evidence*

Burnett alleges there was insufficient evidence to support a first-degree murder conviction. Evidence is sufficient to support a verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Circumstantial evidence, alone, may support a conviction. *Canape v. State*, 109 Nev. 864, 869, 859 P.2d 1023, 1026 (1993).

Here, the evidence placed Smith and Burnett near each other at the time of a shooting, showed Burnett traveling to Nipton road shortly after the shooting, and further showed that co-conspirator Taylor visited Nipton Road a week before the killing and communicated with Burnett from the location where Smith's body was later found. The forensic evidence showed that at least two guns had been used to shoot Smith, which in turn suggested two perpetrators. Under these facts, we conclude that a rational trier of fact could have found the essential elements of first-degree murder beyond a reasonable doubt. *See* NRS 200.010(1); NRS 200.030(1). Moreover, even if the jury rejected direct participation here, these facts were sufficient to show that Burnett conspired with, and aided and abetted, Taylor in the commission of the crime. *See generally Bolden v. State*, 121 Nev. 908, 124 P.3d 191 (2005) (addressing aiding and abetting and conspiracy) (overruled on other grounds by *Cortinas v. State*, 124 Nev. 1013, 195 P.3d 315 (2008).

*Cumulative Error*

Burnett argues that cumulative error warrants reversal. But, because Burnett fails to establish any error, cumulative error does not apply here. *See Pascua v. State*, 122 Nev. 1001, 1008 n.16, 145 P.3d 1031, 1035 n.16 (2006) (rejecting appellant's argument of cumulative error where the

SUPREME COURT
OF
NEVADA

(O) 1947A

"errors were insignificant or nonexistent"); *see also United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) ("One error is not cumulative error."). Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Gibbons

_____, J.
Stiglich

_____, J.
Silver

cc:   Hon. Tierra Danielle Jones, District Judge
Justice Law Center
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk