140 Nev., Advance Opinion 42

## IN THE SUPREME COURT OF THE STATE OF NEVADA

MANUEL MARISCAL-OCHOA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 84670

FILED

JUN 27 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of sexual assault against a child under the age of 14 years and lewdness with a child under the age of 14 years. Second Judicial District Court, Washoe County; Barry L. Breslow, Judge.[1]

*Affirmed.*

Karla K. Butko and Richard A. Molezzo, Verdi,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, Marilee Cate, Appellate Deputy District Attorney, and Erin Morgan, Deputy District Attorney, Washoe County,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

[1]We previously issued an order in this matter on August 17, 2023. We later granted en banc reconsideration. *Mariscal-Ochoa*, Docket No. 84670 (Nov. 22, 2023) (Order Granting En Banc Reconsideration). We now withdraw the prior order and issue this opinion in its place.

SUPREME COURT
OF
NEVADA

(O) 1947A

24-22325

*OPINION*

By the Court, STIGLICH, J.:

In this opinion, we clarify the nature and standard of review for motions pertaining to prejudicial statements by a prospective juror during voir dire. We conclude that a district court does not abuse its discretion in denying a motion for a mistrial, construed as a motion to strike a venire for cause, based on a prospective juror's comments during voir dire unless the comments are so prejudicial that they could not be cured by an admonition.

During voir dire, a prospective juror stated that she might recognize the defendant because he may have abused her niece or nephew. The defense moved for a mistrial. Because the district court found that the prospective juror's statement was equivocal and vague, we conclude that any prejudice could be neutralized by a curative admonition, which the district court administered. Further, the record here does not indicate the statement prejudiced the rest of the venire. Accordingly, the district court did not abuse its discretion in denying the motion for a mistrial. Because the other issues raised on appeal also lack merit, we affirm the judgment of conviction.

*FACTS AND PROCEDURAL HISTORY*

The 9-year-old victim, L.N.C., was home alone when she heard her stepfather, appellant Manuel Mariscal-Ochoa, returning to the house. She ran to her room, jumped out the window, hid in the yard, and called 911 because she feared her stepfather would make her do "stuff" she did not want to do. An investigation ensued, and L.N.C. alleged four instances of abuse in detail, claiming that Mariscal-Ochoa had penetrated her with his fingers or penis on each instance. The State charged Mariscal-Ochoa with

 

four counts of sexual assault against a child under the age of 14 years and one count of lewdness with a child under the age of 14 years.

Mariscal-Ochoa pleaded not guilty, and the case went to trial. During voir dire, after general questioning of the entire venire, the district court asked each prospective juror if there was any reason that the prospective juror could not be fair and impartial. The court asked prospective juror J.M. if she knew anyone participating in the case, and J.M. responded, "I'm not sure because my sister—I know somebody [sic] else about Manuel, they abused one of my nephews." J.M. continued:

> PROSPECTIVE JUROR: Okay. This morning, when I come here and I saw him, I do remember I saw him somewhere but I'm not sure.
>
> THE COURT: The man accused of the crime?
>
> PROSPECTIVE JUROR: Manuel—
>
> THE COURT: You think you might—
>
> PROSPECTIVE JUROR: I don't know if he was married or live with my nephew, Blanca, because I know one case similar where—what he's doing. This is why I'm not sure I know him.
>
> THE COURT: So you may know him, you may not know him?
>
> Well, if you know him, would it be from work, from church, from the neighborhood, from—
>
> PROSPECTIVE JUROR: About my sister—my sister and my nephews—

At this point the attorneys interjected, asked to approach, and then met in chambers to discuss J.M.'s comments. During that discussion, the judge, attorneys, and court reporter all observed that it was difficult to understand J.M.'s statements due to a "language issue," and it was noted that J.M. had indicated in her juror questionnaire that she struggled with English. Beyond the language issue, however, the parties disagreed on the impact

that J.M.'s statements might have had on the other prospective jurors. The State argued that the court should strike J.M. for cause but should not strike the rest of the venire. Mariscal-Ochoa moved for a mistrial, which the State suggested was more accurately characterized as a request to strike the venire for cause given that jeopardy had not yet attached. Mariscal-Ochoa argued J.M.'s statements had tainted the venire such that the resulting prejudice could not be repaired by a curative admonition.

The district court agreed to dismiss J.M. for cause but denied Mariscal-Ochoa's motion for a mistrial, reasoning that J.M.'s statements were not so prejudicial as to require disqualification of the venire. The district court recalled that J.M.'s "answers were a little bit confusing, a little bit hazy" and that "[t]he court didn't see anyone that looked like they were offended, concerned, impacted, no noticeable response from any of the ones seated near her as she stood there answering the court's questions." The court stated that it would provide a curative instruction to the rest of the venire that Mariscal-Ochoa was not on trial for any other offense, but Mariscal-Ochoa requested that the instruction be limited merely to a reiteration of the presumption of innocence to avoid calling attention to J.M.'s statements. Immediately before returning to the courtroom, Mariscal-Ochoa requested that the court say only that J.M. had been dismissed and nothing else.

The district court told the venire that several prospective jurors, including J.M., had been excused, but it did not elaborate. The district court resumed questioning the venire and, after further inquiry, another prospective juror made an oblique reference to J.M.'s comment. At that point, Mariscal-Ochoa requested that the court provide the curative admonition discussed earlier, reiterating the presumption of innocence.

The court promptly administered a curative admonition emphasizing the presumption of innocence, but added language instructing jurors not to discuss uncharged conduct:

> I want to remind everyone that we're here to talk about whether the qualifications of you as potential jurors are such that you can fairly serve in this case, be fair to both sides, follow the law that the court instructs you, listen critically to the evidence, make your own decision. Discuss, if you're chosen as a juror, with the other jurors what the evidence was and what the law is as applied to that. We're not here to talk about uncharged matters against other people, other times, other circumstances. We're not here to talk about whether somebody said something that may impact whatever. No. No.

> We're here to determine if you can be fair and impartial to both sides, if you can apply the law, if you'll promise to be true to the cornerstone of our democracy that those charged with criminal justice matters are presumed innocent at all phases of the trial until and unless the State meets its burden to prove beyond a reasonable doubt all charges against the person for whom the crime has been alleged.

After this admonition, the court concluded its questioning of the remaining prospective jurors.

Once the district court concluded questioning, the State questioned the venire and passed the panel for cause. When Mariscal-Ochoa questioned the jurors, he discussed bias and the presumption of innocence at length. Mariscal-Ochoa concluded his questioning by asking each potential juror, through his attorney, "Can you be a fair and impartial juror to my client?" Each answered affirmatively, and Mariscal-Ochoa passed the panel for cause. Neither party asked the venire specifically about J.M.'s comments.

Supreme Court
OF
Nevada

(O) 1947A

During trial, L.N.C. testified regarding the four distinct incidents she had reported to police. The State also presented corroborating evidence. After the State rested, Mariscal-Ochoa testified and denied all wrongdoing. The jury found Mariscal-Ochoa guilty of one count of sexual assault and the single charged count of lewdness. The jury acquitted Mariscal-Ochoa on the three remaining sexual assault counts.

The district court sentenced Mariscal-Ochoa to an aggregate sentence of life in prison with parole eligibility after 45 years. The district court acknowledged Mariscal-Ochoa's sentencing memorandum that challenged the constitutionality of NRS 200.366(3)(c) but did not rule on the issue, saying it could not deem NRS 200.366 "unconstitutional at this stage." Mariscal-Ochoa now appeals.

## DISCUSSION

Mariscal-Ochoa raises a number of issues. Principally, he challenges the district court's denial of his motion for a mistrial after J.M.'s statements, arguing that the statements so prejudiced the venire that he could not have received a fair trial. Mariscal-Ochoa also argues that the district court improperly instructed the jury regarding the sufficiency of the evidence, that the State committed prosecutorial misconduct, and that he is entitled to the reversal of his conviction based on cumulative error. In addition, he claims that he received ineffective assistance of counsel. Finally, he challenges the constitutionality of NRS 200.366(3)(c). We address each of these claims below.

*The district court did not abuse its discretion when it denied Mariscal-Ochoa's motion for a mistrial*

Mariscal-Ochoa argues that J.M.'s comments during voir dire accused him of uncharged bad acts. He asserts that these accusations so tainted the venire that proceeding with any jurors who heard J.M.'s

statements violated his Confrontation Clause and Sixth Amendment rights, depriving him of a fair trial. Mariscal-Ochoa therefore argues that the district court erred by failing to grant his mistrial motion. As the State correctly pointed out, a mistrial was an incorrect request because a jury was not yet empaneled and therefore jeopardy had not attached. *See Burns v. State*, 137 Nev. 494, 498, 495 P.3d 1091, 1098-99 (2021) (concluding that jeopardy attaches once the jury is empaneled). Nevertheless, the parties proceeded as though the proper motion had been made, and the district court construed Mariscal-Ochoa's motion as a motion to strike the venire for cause. We conclude that the district court did not abuse its discretion by issuing a curative admonition rather than dismissing the venire.

*We review the district court's decision for abuse of discretion*

This court has not previously addressed the correct standard for reviewing a district court decision regarding a potentially prejudicial statement from a prospective juror during voir dire. "Decisions concerning the scope of voir dire and the manner in which it is conducted are reviewable only for abuse of discretion and draw considerable deference on appeal." *Lamb v. State*, 127 Nev. 26, 37, 251 P.3d 700, 707 (2011) (citation and internal quotation marks omitted). As we have recognized when reviewing district court decisions on challenges to individual prospective jurors for cause and peremptory strikes, "[t]he trial court is better able to view a prospective juror's demeanor than a subsequent reviewing court." *Leonard v. State*, 117 Nev. 53, 67, 17 P.3d 397, 406 (2001). Therefore, we conclude abuse of discretion is the appropriate standard here. "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001).

*The district court was within its discretion to provide a curative admonition rather than disqualify the venire*

The United States and Nevada Constitutions guarantee the right to a trial by jury. U.S. Const. amend. VI; Nev. Const. art. 1, § 3. To effectuate the right to a jury trial, defendants must "have 'a panel of impartial, "indifferent" jurors.'" *Bishop v. State*, 92 Nev. 510, 515, 554 P.2d 266, 269 (1976) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). Central to determining whether an impartial juror has been seated is "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Blake v. State*, 121 Nev. 779, 795, 121 P.3d 567, 577 (2005) (quoting *Irvin*, 366 U.S. at 723). The right to an impartial jury is violated when empaneled jurors are unfair or biased. *Id.* at 796, 121 P.3d at 578. When a jury is exposed to potentially prejudicial information, we have required the appellant to prove that the exposure "was so prejudicial as to be unsusceptible to neutralizing by an admonition to the jury." *Geiger v. State*, 112 Nev. 938, 942, 920 P.2d 993, 995 (1996) (quoting *Allen v. State*, 99 Nev. 485, 490, 665 P.2d 238, 241 (1983)), *overruled on other grounds by Barber v. State*, 131 Nev. 1065, 363 P.3d 459 (2015).

In *Geiger*, the defendant was charged as a habitual offender, and the pertinent statute required that the defendant's prior convictions be listed in the charging document but prohibited their use at trial. *Id.* at 941 n.3, 920 P.2d at 995 n.3. After the jury was empaneled,[2] but before opening statements, the court clerk read the charging document, including improper references to the prior offenses. *Id.* at 941-42, 920 P.2d at 995. Geiger

---

[2]Although the motions in these cases are different, we review a district court's actions on a mistrial motion for abuse of discretion. *Randolph v. State*, 117 Nev. 970, 981, 36 P.3d 424, 431 (2001). Thus, our standard of review in both cases is the same.

moved for a mistrial, claiming the impermissible reference prejudiced the jury against him. *Id.* at 940, 920 P.2d at 994-95. The district court denied the motion but admonished the jury that it was not to consider the document as read by the clerk. *Id.* at 940, 920 P.2d at 995. On review, this court concluded that the district court was within its discretion to provide a curative instruction rather than grant a mistrial motion. *Id.* at 942, 920 P.2d at 996.

*Geiger* determined that some potentially prejudicial references are susceptible to curative admonitions, while others are not. *Geiger* adopted a four-factor test to determine whether an improper reference to a prior bad act was curable: "(1) whether the remark was solicited by the prosecution; (2) whether the district court immediately admonished the jury; (3) whether the statement was clearly and enduringly prejudicial; and (4) whether the evidence of guilt was convincing." *Id.* at 942, 920 P.2d at 995-96. The court concluded that the curative admonition sufficed where the prosecution did not solicit the statement, the judge immediately and thoroughly admonished the jury, the statement was merely a single reference at the start of a two-day trial, and the other evidence of guilt was convincing. *Id.* at 942, 920 P.2d at 996.

We apply *Geiger* to assess whether an admonition may cure prejudicial information improperly presented to a venire. Although *Geiger* involved prejudicial information that was disclosed to an empaneled jury rather than a venire, the nature of the information and the underlying concerns are similar. In both cases, the information involved other uncharged acts that could prejudice the jury. The information in both cases also came from a nonparty who was not a witness—the court clerk in *Geiger*

and a prospective juror in this case. Therefore, we consider *Geiger*'s framework to be appropriate here.

Our analysis of the four *Geiger* factors as to the denial of Mariscal-Ochoa's motion yields a similar result to *Geiger*. First, the prosecution did not solicit J.M.'s statements. Rather, J.M. was responding to the court, and the State interrupted the court's questions to avoid further prejudice. This factor supports allowing for a curative admonition.

Second, although the admonition came later than in *Geiger*, the district court admonished the venire when requested by Mariscal-Ochoa. *Cf. LaChance v. State*, 130 Nev. 263, 276, 321 P.3d 919, 928 (2014) (stating that "a defendant will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit" (internal quotation marks omitted)). After the recess following the denial of Mariscal-Ochoa's motion for a mistrial, the district court indicated that it was ready to provide the curative admonition when the venire returned, but the court delayed doing so at Mariscal-Ochoa's request. After the district court asked further questions of prospective jurors, Mariscal-Ochoa requested the instruction, and the court promptly provided it. District courts may have a sua sponte duty to act with more alacrity when a prospective juror makes a clearly prejudicial statement requiring immediate attention. Given the unclear nature of J.M.'s statement, however, it was permissible for the district court to honor Mariscal-Ochoa's request to delay the curative admonition. Thus, the second factor as to whether a curative admonition was timely is neutral.

Third, J.M.'s statement was not clearly and enduringly prejudicial. Similar to *Geiger*, J.M.'s statement occurred on the first day of voir dire in a multiday trial. Each empaneled juror committed to being

SUPREME COURT
OF
NEVADA

(O) 1947A

neutral and fair to Mariscal-Ochoa, even after J.M. made her statements. J.M.'s comments also appeared to the district court to be "hazy" and equivocal, and J.M. did not state that she knew Mariscal-Ochoa, only that she thought she *might* have known him. The court noted that J.M. spoke quietly and indicated a language barrier in her jury questionnaire. Further, it is not clear what J.M. alleged Mariscal-Ochoa did. The district court also noted that no other prospective juror visibly reacted to J.M.'s statements.

Moreover, Mariscal-Ochoa has not shown enduring prejudice through examining the other prospective jurors. Mariscal-Ochoa did not question the other prospective jurors about J.M.'s comments, and he did not attempt to determine whether J.M.'s statements had a prejudicial effect on the other venirepersons. Only the district court made a record of its observations, noting that the other venirepersons did not seem affected by J.M.'s statements. Further, Mariscal-Ochoa did not question J.M. outside the presence of the venire to determine the veracity of her story and whether she actually knew Mariscal-Ochoa. He instead moved to strike her for cause without any further fact-gathering for the record. Under these circumstances, we cannot assume that the jury was prejudiced by J.M.'s single vague statement. Thus, factor three of the *Geiger* analysis—whether the statement was clearly and enduringly prejudicial—strongly supports the sufficiency of a curative admonition.

Fourth, notwithstanding J.M.'s comment, the evidence of Mariscal-Ochoa's guilt based on L.N.C.'s testimony is sufficient to secure Mariscal-Ochoa's conviction. As discussed below, the State presented sufficient evidence at trial for a reasonable jury to convict Mariscal-Ochoa of the charged offenses. Thus, factor four of the *Geiger* analysis also supports the sufficiency of a curative admonition.

SUPREME COURT
OF
NEVADA

(O) 1947A

11

Under our analysis of the *Geiger* factors, we conclude that J.M.'s statements were not so prejudicial that they could not be cured by an admonition. Thus, we conclude the district court did not abuse its discretion by choosing to provide a curative admonition rather than dismissing the venire.

Finally, Mariscal-Ochoa challenges the efficacy of the provided admonition. We agree that to the extent the admonition was intended to ameliorate prejudice from J.M.'s statements, it should have explicitly referred to J.M.'s statements. Nonetheless, Mariscal-Ochoa failed to object at the time the admonition was given, and the admonition otherwise correctly states the law. Mariscal-Ochoa also fails to establish how the admonition prejudiced him. Therefore, we decline to consider the admonition's actual effectiveness in this case.

*Mariscal-Ochoa was not entitled to a lesser-included-offense jury instruction and his convictions for sexual assault and lewdness are not redundant*

Mariscal-Ochoa asserts two arguments regarding the interplay between his sexual assault and lewdness convictions. He argues first that the jury should have been instructed that lewdness with a minor was a lesser-included offense of sexual assault of a minor. He next claims that, because sexual assault of a minor and lewdness with a minor are mutually exclusive, his two convictions are redundant because they are based on a single act. Mariscal-Ochoa did not raise these arguments below, so we review for plain error. *Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018).

First, we have previously held that "it is clear that lewdness with a child under the age of fourteen cannot be deemed an included offense of the crime of sexual assault. The express language of the lewdness statute precludes this." *Townsend v. State*, 103 Nev. 113, 120, 734 P.2d 705, 710

SUPREME COURT
OF
NEVADA

(O) 1947A

(1987). Mariscal-Ochoa fails to address *Townsend* and thus fails to show any error.

Second, we are similarly unconvinced by Mariscal-Ochoa's redundancy argument. Mariscal-Ochoa's convictions are not redundant. "The crimes of sexual assault and lewdness are mutually exclusive and convictions for both based upon a single act cannot stand." *Braunstein v. State*, 118 Nev. 68, 79, 40 P.3d 413, 421 (2002). To support separate convictions for lewdness and sexual assault, the defendant must have committed separate acts with at least some interruption in activity. *Crowley v. State*, 120 Nev. 30, 34, 83 P.3d 282, 285-86 (2004). In this case, the State charged Mariscal-Ochoa with sexual assault and lewdness related to incidents that took place on different dates. L.N.C. testified that the two incidents for which Mariscal-Ochoa was convicted occurred on different dates. Therefore, we conclude Mariscal-Ochoa's convictions for sexual assault and lewdness are not redundant.

*Sufficient evidence supports Mariscal-Ochoa's convictions*

Mariscal-Ochoa argues that the State presented insufficient evidence to sustain his convictions, asserting that it "makes no sense" for the jury to convict him of some counts but not others based on L.N.C.'s testimony. In essence, Mariscal-Ochoa argues the jury cannot have partially believed L.N.C.'s testimony. We disagree.

In reviewing the sufficiency of the evidence, this court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998). "[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses."

*McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). Because sex crimes often rely solely on victim testimony, this court has concluded that so long as the victim testifies "with *some* particularity regarding the incident," the victim's testimony alone can support a sexual assault charge. *LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992).

L.N.C. provided a detailed account of the incidents that resulted in Mariscal-Ochoa's two convictions. She recounted in detail what Mariscal-Ochoa did to her and other relevant details that a 9-year-old would likely remember. She testified that Mariscal-Ochoa did not actually penetrate L.N.C. on three of the four events. Therefore, a rational jury could convict Mariscal-Ochoa of one incident constituting sexual assault involving penetration and lewdness for another incident where penetration did not occur, while acquitting on the other sexual assault charges based on L.N.C.'s testimony. It is not our role to invade the province of the jury to evaluate witness credibility. Accordingly, we conclude that sufficient evidence supports Mariscal-Ochoa's convictions.

*The prosecution did not commit misconduct during its closing argument*

Mariscal-Ochoa alleges that the prosecution committed misconduct during its closing argument by vouching for L.N.C.'s testimony and by calling Mariscal-Ochoa a liar.

When a defendant alleges prosecutorial misconduct, we determine first "whether the prosecutor's conduct was improper" and second, if so, whether the conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). Because we conclude that the prosecutor's conduct here was proper, we do not reach the second step of the analysis.

The prosecutor did not vouch for L.N.C. "[V]ouching occurs when the prosecution places the prestige of the government behind the

witness by providing personal assurances of [the] witness's veracity." *Browning v. State*, 120 Nev. 347, 359, 91 P.3d 39, 48 (2004) (second alteration in original) (internal quotation marks omitted). Here, the prosecutor argued that "[L.N.C.]'s statements have always been consistent" regarding an element of the sexual assault count. This explanation does not amount to vouching, as the prosecutor did not make an assurance of L.N.C.'s truthfulness. *See id.* (allowing a prosecutor to comment that a witness's testimony supported a conviction). We conclude that the prosecutor did not commit misconduct in this regard.

Nor did the prosecutor's comments about Mariscal-Ochoa's testimony amount to misconduct. It is generally improper for a prosecutor to characterize a witness as a liar. *Witherow v. State*, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988). In closing arguments, the prosecutor stated the following:

> The statements of the defendant are not to be believed. The defendant doesn't want to be found guilty and he has some bias, certainly. If the jury believes that any witness has willfully sworn falsely, they may disregard the whole of the evidence of any such witness. The defendant stood up here and said, I didn't do it. I didn't sexually assault [L.N.C.]. You have to view that in the context of his other statement that he didn't go back to the house on December 11th, 2019.

> Ladies and gentlemen, when he says he didn't go back to the house, the evidence proves otherwise. He willfully swore falsely on this witness stand. His statements that he didn't do it should be disregarded.

Though calling a witness a liar is generally inappropriate, "when a case involves numerous material witnesses and the outcome depends on which witnesses are telling the truth, reasonable latitude should be given to the

prosecutor to argue the credibility of the witness—even if this means occasionally stating in argument that a witness is lying." *Rowland v. State*, 118 Nev. 31, 39, 39 P.3d 114, 119 (2002). This case turned on the competing testimony of L.N.C. and Mariscal-Ochoa. The prosecutor could permissibly argue that Mariscal-Ochoa's testimony was not credible based on the other evidence in the case. *See Ross v. State*, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990). Thus, we conclude that the prosecution did not commit misconduct by so arguing.

*Nevada's sentencing statute for sexual assault is constitutional*

Mariscal-Ochoa argues that NRS 200.366(3)(c), which mandates a sentence of 35 years to life, violates the Eighth Amendment of the United States Constitution and the separation of powers provision of the Nevada Constitution by depriving the judiciary of discretion at sentencing. We disagree.

Because the sentence under NRS 200.366(3)(c) is mandatory, the district court lacks the discretion ordinarily exercised in sentencing.[3] We review the constitutionality of a statute de novo. *Collins v. State*, 125 Nev. 60, 62, 203 P.3d 90, 91 (2009). "Statutes are presumed to be valid," and a "challenger must make a clear showing of invalidity." *Id.* (internal quotation marks omitted). Both the United States and Nevada Constitutions prohibit cruel or unusual punishment. *See* U.S. Const. amend. VIII; Nev. Const. art. 1, § 6. "A sentence does not constitute cruel and unusual punishment unless the statute fixing punishment is

---

[3]Here, the only discretion available in sentencing was whether to impose the sentences consecutively or concurrently. The district court chose to impose the sentences consecutively, and we conclude that decision was not an abuse of discretion.

SUPREME COURT
OF
NEVADA

(O) 1947A

unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience." *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979).

Mariscal-Ochoa argues that NRS 200.366(3)(c) is unconstitutional because it imposes higher penalties than any comparable statute in the nation and is excessive and extreme because it does not facilitate rehabilitation. Even if Mariscal-Ochoa were correct in asserting that Nevada's sentence for sexual assault of a child under 14 years of age was disproportionately severe relative to other states, a higher sentence for a crime in one state relative to other states does not render a sentencing statute unconstitutional. Rather, divergence in sentences among states "is the inevitable, and often beneficial, result of the federal structure." *People v. Cooper*, 51 Cal. Rptr. 2d 106, 110 (Ct. App. 1996); *see also Rummel v. Estelle*, 445 U.S. 263, 282 (1980) ("Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State."). We conclude that the existence of distinctions in sentences between states does not overcome the presumption of validity.

Further, Mariscal-Ochoa does not show that his punishment is so disproportionate as to shock the conscience. "[A] punishment is excessive and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Pickard v. State*, 94 Nev. 681, 684, 585 P.2d 1342, 1344 (1978) (internal quotation marks omitted). We have recognized that the term of imprisonment imposed by NRS 200.366(3)(c) serves a valid retributive purpose. *Griego v. State*, 111 Nev.

SUPREME COURT
OF
NEVADA

(O) 1947A

17

444, 447, 893 P.2d 995, 997 (1995), *abrogated on other grounds by Koerschner v. State*, 116 Nev. 1111, 13 P.3d 451 (2000). NRS 200.366(3)(c) serves other valid goals of punishment as well, and we conclude the punishment is not grossly out of proportion to the severity of the crime. *Cf. Alfaro v. State*, 139 Nev., Adv. Op. 24, 534 P.3d 138, 152 (2023) (concluding that an aggregate sentence of 275 years for multiple convictions of sexual assault against and lewdness with a child under 14 years of age was not unreasonably disproportionate to the crimes where each count was sentenced within its statutory range). Sexual assault of a child is undoubtedly a serious crime, and the Legislature has the power to require a harsh punishment. Therefore, we conclude that Mariscal-Ochoa's sentence was not unconstitutionally cruel or unusual.

Mariscal-Ochoa also urges us to invalidate the Legislature's mandatory sentencing scheme, citing *United States v. Booker*, 543 U.S. 220 (2005), and advancing several policy and interest-of-justice rationales. In *Mendoza-Lobos v. State,* we expressly upheld such a mandatory scheme, holding that "it is within the Legislature's power to completely remove any judicial discretion to determine a criminal penalty by creating mandatory sentencing schemes." 125 Nev. 634, 640, 218 P.3d 501, 505 (2009). Mariscal-Ochoa acknowledges this legal precedent but argues that "[t]his sentencing scheme needs an overhaul." We decline to overturn *Mendoza-Lobos.* First, Mariscal-Ochoa's reliance on *Booker* is misplaced, as *Booker* concerned a sentencing judge's application of federal sentencing guidelines. *See Booker,* 543 U.S. at 244 ("Any fact . . . necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). Mariscal-Ochoa next urges us to

disregard this court's legal precedent on separation-of-powers grounds. We construed the division of constitutional powers between the branches of state government in *Mendoza-Lobos*, however, and upheld mandatory sentences as consonant with that distribution. 125 Nev. at 640, 218 P.3d at 505. The separation of powers does not provide a justification for deviating from *Mendoza-Lobos*. Moreover, to the extent that Mariscal-Ochoa relies on sociological studies to suggest that long sentences fail to deter crime or rehabilitate convicted persons, those are policy arguments to be made before the Legislature and not valid grounds to invalidate precedent. Mariscal-Ochoa therefore fails to present a compelling argument for overturning *Mendoza-Lobos*. *See Armenta-Carpio v. State*, 129 Nev. 531, 535, 306 P.3d 395, 398 (2013) ("[U]nder the doctrine of *stare decisis*, we will not overturn [precedent] absent compelling reasons for so doing." (internal quotation marks omitted)). Accordingly, Mariscal-Ochoa has not shown that relief is warranted in this regard.[4]

## *CONCLUSION*

Decisions regarding voir dire generally, and regarding motions to strike the entire venire specifically, are within the district court's discretion. The district court acted within its discretion here when it denied

---

[4]Mariscal-Ochoa argues that he received ineffective assistance of counsel. We decline to consider this claim. *Archanian v. State*, 122 Nev. 1019, 1036, 145 P.3d 1008, 1020-21 (2006) ("This court has repeatedly declined to consider ineffective-assistance-of-counsel claims on direct appeal unless the district court has held an evidentiary hearing on the matter or an evidentiary hearing would be needless."). Additionally, Mariscal-Ochoa argues cumulative error warrants reversal. Because we find no errors to cumulate, we reject this argument. *See Pascua v. State*, 122 Nev. 1001, 1008 n.16, 145 P.3d 1031, 1035 n.16 (2006) (rejecting appellant's argument of cumulative error where the "errors were insignificant or nonexistent").

Mariscal-Ochoa's motion for a mistrial, construed as a motion to strike the entire venire, based on a prospective juror's statements because those statements were not so prejudicial as to be unsusceptible to a curative admonition under the factors in *State v. Geiger*. Mariscal-Ochoa's counsel failed to develop the record during voir dire to show any clear and enduring prejudicial effect J.M.'s statements had on the rest of the venire, and we cannot infer or assume prejudicial effect from a single "hazy" statement and an otherwise silent record. Accordingly, we affirm the judgment of conviction.

_____, J.
Stiglich

We concur:

_____, C.J.
Cadish

_____, J.
Herndon

_____, J.
Parraguirre

_____, J.
Pickering

_____, J.
Lee

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A

20